# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## Nos. 24-1842 & 24-3134

---

IN RE: U LOCK, INC,
*Debtor.*

SHANNI SNYDER,
*Appellant,*

v.

CHRISTINE BIROS,
*Appellee.*

---

## BRIEF OF APPELLEE, CHRISTINE BIROS

---

On Appeal from the March 5, 2024 and April 3, 2024 Orders of the United States District Court for the Western District of Pennsylvania at Case No. 2:23-cv-00979-RJC dismissing the motion to withdraw reference and the motion to alter, amend, reconsider, or vacate, and from the October 11, 2024 and November 9, 2024 Orders of the United States District Court for the Western District of Pennsylvania at Case No. 2:24-cv-00478-NBF affirming the February 29, 2024 Order of the United States Bankruptcy Court for the Western District of Pennsylvania at Case No. 22-20823-GLT and striking and denying the motion for reconsideration

---

Stuart C. Gaul, Jr., Esq.
Pa. I.D. No. 74529
BERNSTEIN-BURKLEY, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
(412) 456-8100  Telephone
(412) 456-8135  Facsimile
sgaul@bernsteinlaw.com

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES PRESENTED ......................................4

STATEMENT OF RELATED CASES AND PROCEEDINGS.................5

CONCISE STATEMENT OF THE CASE .................................................7

    A.  Snyder and Her Family.................................................................8

    B.  Snyder's 2018 Statements to the Court of Common Pleas of Westmoreland County...........................................................................8

    C.  Snyder's 2018 Statements to the Bankruptcy Court ...................10

    D.  The *Biros v. U Lock* Action .........................................................12

    E.  Snyder's Lawsuit in this Court.....................................................13

    F.  Snyder's Later Claims and Appeal ..............................................16

    G.  Snyder's Commencement of the Bankruptcy Case and Proceedings in the Superior Court .................................................17

    H.  Snyder's Claim, Biros's Objection, and Pre-Hearing Proceedings ...........................................................17

    I.  Snyder's Motion to Withdraw the Reference................................19

    J.  The Evidentiary Hearing .............................................................20

    K.  The Dismissal Without Prejudice of Biros's Unsecured Claims ...23

    L.  The Bankruptcy Court's Decision and Disallowance of Snyder's Claims...............................................................................24

    M.  The District Court's Denial of the Withdrawal Motion.................28

    N.  The District Court's Affirmance on the Merits.............................29

SUMMARY OF ARGUMENT ..................................................................31

ARGUMENT ...........................................................................................33

    A.  Standard of Review ......................................................................33

    B.  Biros Had Standing To Object to Snyder's Claim. .......................33

C.  The Bankruptcy Court Had Jurisdiction To Resolve Biros's
Objections to Snyder's Claims. ..................................................... 37

1.  The Bankruptcy Court Had the Power to Adjudicate Biros's
Objections ....................................................................................... 37

2.  Snyder's Withdrawal Motion Did Not Strip the Bankruptcy
Court of Its Power to Adjudicate Biros's Objections ...................... 41

D.  Biros Objections Are Not Precluded by the Default Judgment
Snyder Procured in an Action to Which
Biros Was Not a Party. .................................................................. 43

1.  As Biros is Not in Privity with U Lock, Neither Collateral
Estoppel nor Res Judicata Is Applicable. ..................................... 43

2.  As the Issues Here Were Not Actually Litigated in the
District Court, Collateral Estoppel Is of No Application ........... 46

3.  Res Judicata Does Not Operate in the Event of Fraud. ............. 48

E.  This Court Should, Like the District Court, Affirm the
Bankruptcy's Court's Disallowance of Snyder's Claims ............... 49

1.  The Bankruptcy Court Properly Placed the Burden on
Snyder to Prove the Validity of Her Claims................................. 49

2.  The Bankruptcy Decision That Snyder Lied Throughout Her
Involvement with That Court and This Court Is Sufficiently
Supported by the Evidence. ........................................................ 51

3.  The Bankruptcy Court Was Correct in Holding that the Fair
Labor Standards Act Never Provided Snyder with a Claim....... 55

4.  Snyder Neither Asserted nor Proved Any Amount
Less Than Her Total Claim. ........................................................ 57

CONCLUSION ................................................................................... 59

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

## Cases

*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*,
 920 F.2d 1127 (3d Cir. 1990) ................................................................ 2

*Arrington v. Sweet Home Primary Care*, 2022
 U.S. Dist. LEXIS 151825  (E.D. Pa. Aug 24, 2022) ........................... 47

*Board of Trustees of Trucking Employees of New Jersey Welfare
 Fund, Inc. – Pension Fund v. Centra*, 983 F.2d 495 (3d Cir. 1992) .... 43

*Comdyne I, Inc. v. Corbin*, 908 F.2d 1142 (3d Cir.1990) ........................ 47

*Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218 (3d Cir. 1991) ........... 56

*D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431 (E.D. Pa. 2006) ............... 47

*Davis v. Federal Election Comm'n*, 554 U.S. 724 (2008) ........................ 33

*Doe v. Hesketh*, 828 F.3d 159 (3d Cir. 2016) ......................................... 44

*Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25 (2014) ... 40

*Federated Department Stores v. Moitie*, 452 U.S. 394 (1981) ............... 43

*Gardner v. New Jersey*, 329 U.S.  565 (1947) ........................................ 38

*Gen. Nutrition Inv. Co. v. Ingrounds Pro, Inc.*,
 No. 2:20-cv-00022-RJC, 2020 U.S. Dist. LEXIS 60766
 (W.D. Pa. Apr. 7, 2020) ......................................................................... 47

*George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226 (3d Cir. 2024) ...... 34

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ..................... 38, 39

*Hazel–Atlas Glass Co. v. Hartford–Empire Co.*,
   322 U.S. 238 (1944) ............................................................... 30

*In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992) .................... 49, 50

*In re Am. Classic Voyages Co.*, 405 F.3d 127 (3d Cir. 2005) ................. 33

*In re Brown*, 951 F.2d 564 (3d Cir. 1991) ............................................. 33

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) ......... 35

*In re Energy Future Holdings Corp.*, 990 F.3d 728 (3d Cir. 2021) ........ 33

*In re Imerys Talc Amer., Inc.*, 38 F.4th 361 (3d Cir. 2022) ................... 34

*In re MacMillan*, 579 F.2d 289 (3d Cir. 1978) ...................................... 46

*In re Masdea*, 307 B.R. 466 (Bankr. W.D. Pa. 2004) ............................. 46

*In re Mechanicsburg Fitness, Inc.,* 592 B.R. 798
   (Bankr. M.D. Pa. 2018) ...................................................... 35

*In re Myers*, 491 F.3d 120 (3d Cir. 2007) .............................................. 53

*In re Nortel Networks, Inc.*, 539 B.R. 704 (D. Del. 2015) ...................... 43

*In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116 (3d Cir. 1999) ............. 33

*In re Pruitt*, 910 F.2d 1160 (3d Cir. 1990) ............................................ 42

*In re Romano*, 378 B.R. 454 (Bankr. E.D. Pa. 2007) .............................. 48

*In re Titus*, 916 F.3d 293 (3d Cir. 2019) ............................................... 45

*In re U Lock, Inc.*, No. 24-1163, 2025 U.S. App. LEXIS 1698,
   2025 WL 303065 (Jan. 27, 2025) ......................................... 6

iv

*In re Weinstein Co. Holdings*, 595 B.R. 455 (Bankr. D. Del. 2018) ....... 35

*In re White Motor Corp.*, 42 B.R. 693 (N.D. Ohio 1984) ........................ 43

*In re Wilton Armetale, Inc.*, 968 F.3d 273 (3d Cir. 2020) ...................... 34

*In re Winstar Communs., Inc.*, 554 F.3d 382 (3d Cir. 2009) ................. 39

*Katchen v. Landy*, 382 U.S. 323 (1966) ............................................... 38

*Langenkamp v. Culp*, 498 U.S. 42 (1990) ............................................ 38

*Lujan v. Defenders of Wildlife*, 504 U. S. 555 (1992) ........................... 33

*Lutter v. JNESO*, 86 F.4th 111 (3d Cir. 2023) ..................................... 33

*Mitchell v. Lublin, McGraughy & Assoc's*, 358 U.S. 207 (1959) ............ 56

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272,
    284, 15 L. Ed. 372 (1855) ............................................................... 39

*One2One Communs., v. Quad/Graphics, Inc.*, 805 F.3d 428
    (3d Cir. 2015) .................................................................................. 40

*Peace Church Risk Retention Grp. v. Johnson Controls Fire
    Protection LP*, 49 F.4th 866 (3d Cir. 2022) ...................................... 2

*Peloro v. United States*, 488 F.3d 163 (3d Cir. 2007) ........................... 46

*Resolution Trust Corp. v. Pasquariello (In re Pasquariello)*,
    16 F.3d 525 (3d Cir. 1994) .......................................................... 2, 39

*Riehle v. Margolies*, 279 U.S. 218 (1929) ............................................ 48

*Seitz v. Rothermel*, 638 B.R. 846 (E.D. Pa. 2022) ................................ 43

*Snyder v. Biros*, No. 24-1202, 2025 U.S. App. LEXIS 476,
    2025 WL 52848 (3d Cir. Jan. 9, 2025) .............................................. 5

*Stern v. Marshall*, 564 U.S. 462 (2011) ..................................... passim

*Taylor v. Sturgell*, 553 U.S. 880 (2008) .................................................. 44

*Tony & Susan Alaimo Found. v. Secretary of Labor*,
     471 U.S. 290 (1985) .................................................................. 55

*United States v. Texas*, 599 U.S. 670 (2023) ......................................... 33

*Wirtz v. F.M Sloan, Inc.*, 411 F.2d 56 (3d Cir. 1969) ............................. 56

## Constitution

U.S. Const. art. III ......................................................... 33, 37, 38

U.S. Const. amend. 7 ............................................................... 39

## Statutes

11 U.S.C. § 105 ....................................................................... 1

11 U.S.C. § 501 ...................................................................... 40

11 U.S.C. § 502 ............................................................... passim

18 U.S.C. §§ 1961 *et seq.* .......................................................... 6

28 U.S.C.  § 157 .............................................................. passim

28 U.S.C. § 158 .................................................................. 1, 2

28 U.S.C. § 303 ..................................................................... 45

28 U.S.C. § 3201 ............................................................... 18, 40

29 U.S.C. §§ 201 *et seq* .................................................... passim

29 U.S.C. § 203 ......................................................... 25, 55, 56

29 U.S.C. § 206 ..................................................... 25, 26, 55

18 Pa. C.S. § 4904 ................................................................... 9

## Regulations

29 C.F.R. § 779.115 ............................................................... 56

29 C.F.R. § 779.234 ............................................................... 26

## Rules

Fed. R. App. P. 42 .................................................................. 37

Fed. R. Bankr. P. 1011 ........................................................... 45

Fed. R. Bankr. P. 5011 ................................................... 2, 41, 42

Fed. R. Bankr. P. 8002 ............................................................. 2

## Treatises

1 *Collier on Bankruptcy* ¶ 3.04 (15th ed.) ................................ 2

4 *Collier on Bankruptcy* ¶ 502.02 (16th ed.) ........................... 35

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 158(d) to consider the appeal at No. 24-3134.  Appellant Shanni Snyder takes that appeal from the October 11, 2024 decision of the United States District Court for the Western District of Pennsylvania (the "District Court") at Case No. 2:24-cv-00478-NBF that affirmed the decision of U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") to disallow Snyder's claim in *In re U Lock, Inc.* (the "Bankruptcy Case"), *A72,* as well as from the November 8, 2024 order of the District Court that struck and dismissed Snyder's motion for reconsideration, *A73*.

Snyder filed her notice of appeal to this Court on November 12, 2024, which was within thirty days of the order denying her motion for reconsideration.  *A165.*

The Bankruptcy Case remains pending before the Bankruptcy Court at No. 22-20823-GLT.  The Bankruptcy Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. § 157.  It had jurisdiction to hear and decide Biros's objections to Snyder's claim under that statute and 11 U.S.C. §§ 105 and 502(b).

The District Court had jurisdiction under 28 U.S.C. § 158(a) to hear Snyder's appeal. Snyder filed her appeal with the Bankruptcy Court on March 14, 2024, *A42-48*, which was within fourteen days after that court's entry of the February 29, 2024 order from which she appealed. *See* 28 U.S.C. § 158(c)(2); Fed. R. Bankr. P. 8002(a)(1).

In addition, this Court has jurisdiction to determine its jurisdiction. *See Peace Church Risk Retention Grp. v. Johnson Controls Fire Protection LP*, 49 F.4th 866, 869 (3d Cir. 2022).

By contrast, this Court lacks jurisdiction to consider the appeal at No. 24-1842 from the decision of the District Court at Case No. 2:23-cv-00979-RJC to deny (or "dismiss") Snyder's "Motion To Withdraw Reference Pursuant to 28 USC 157(d) and Fed. R. Bankr. Proc. 5011(a) as to the Objection to Claim Number 1" (the "Withdrawal Motion"). "It is well-settled that orders granting or denying motions for withdrawal of reference are not final." *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1131 (3d Cir. 1990). *See also Resolution Trust Corp. v. Pasquariello (In re Pasquariello)*, 16 F.3d 525, 528 (3d Cir. 1994) ("Our recent holding in *Allegheny . . .* is as explicit as it can be on this point."); 1 *Collier on Bankruptcy* ¶ 3.04[3] ("Orders

withdrawing and refusing to withdraw the reference are interlocutory."

(footnotes omitted)).

## STATEMENT OF THE ISSUES PRESENTED

1. Whether this Court and the courts below had jurisdiction to adjudicate an objection to a fraudulent claim in bankruptcy when the objector held and may still hold competing claims and the claimant, despite the disallowance of her claim and the affirmance of that disallowance, continues to assert the validity of her claim.

2. Whether a bankruptcy court has jurisdiction to finally determine the validity of a claim submitted to it in a case under the Bankruptcy Code.

3. Whether the Bankruptcy Court could determine that a claimant procured her claim by fraud when that claim was supported by a default judgment from an action to which the objector had not been a party.

4. Whether the Bankruptcy Court, in disallowing a claim that the sitting judge identified as the clearest example of fraud on the court that the judge had seen from the bench, correctly identified and applied the law and entered findings that were free from clear error.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Snyder's brother George Snyder is the appellant in this Court at No. 25-1177.  He takes that appeal from the Bankruptcy Court's January 8, 2024 approval of a settlement in the Bankruptcy Case between Biros and the Chapter 7 trustee that allowed and compromised the amount of Biros's administrative claim.  *A145 at #523, A146 at #532.*  The District Court affirmed that approval.  *A155 at #606.*  George Snyder's brief in that appeal is not yet due.

Snyder herself remains an active litigant against Biros in other courts.  On April 15, 2025, the United States Supreme Court granted Snyder's application to extend to June 8, 2025 her period in which to petition the Court for a writ of certiorari from this Court's decision in *Snyder v. Biros*, No. 24-1202, 2025 U.S. App. LEXIS 476, 2025 WL 52848 (3d Cir. Jan. 9, 2025).  In that decision, this Court affirmed the Bankruptcy Court's dismissal of Snyder's complaint in her adversary proceeding against Biros.

In the Superior Court of Pennsylvania, Snyder is the appellant and Biros is the appellee in *Biros v. U Lock, Inc.*, which is pending at 113 WDA 2024.  Snyder was also the appellant in other appeals with

5

that same caption in that court. However, the Supreme Court of Pennsylvania denied Snyder's petitions for review, and the period in which she can petition the United States Supreme Court for review of those decisions has lapsed.

Also of note, on April 25, 2025, the Supreme Court granted George Snyder's application at No. 24A1036 to extend to June 26, 2025 his period in which to petition for a writ of certiorari from this Court's decision in *In re U Lock, Inc.*, No. 24-1163, 2025 U.S. App. LEXIS 1698, 2025 WL 303065 (Jan. 27, 2025). In that decision, this Court affirmed the disallowance of George's claim in the Bankruptcy Case.

Finally, Biros is the appellant in this Court and Snyder is among the appellees in *Biros v. Snyder* at No. 25-1845. Biros takes that appeal from the District Court's decision at Case No. 2:23-cv-00297-RJC, which dismissed her claim under the Racketeer-Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, and declined to exercise supplemental jurisdiction over her state-law claims.

## <u>CONCISE STATEMENT OF THE CASE</u>

As noted above, this consolidated appeal is from  the March 5,
2024 and April 11, 2024 orders of the Honorable Robert J. Colville of
the District Court that denied the Withdrawal Motion and the October
11, 2024 and November 9, 2024 decisions of the Honorable Nora Barry
Fischer of the District Court that affirmed the February 29, 2024
decision of the Honorable Gregory J. Taddonio of the Bankruptcy Court
that sustained Biros's objections to Ms. Snyder's claim in the
Bankruptcy Case and disallowed that claim.

Judge Taddonio's February 29, 2024 decision is published at 2024
Bankr. LEXIS 484 and 2024 WL 878464.  In disallowing Snyder's claim,
he concluded that the claim was based on Snyder's own fraud on both
the District Court and the Bankruptcy Court because Snyder had not
performed the work that she claimed to have performed and that
underlay her claim.

Judge Colville's orders on the Withdrawal Motion are unreported.

Judge Fischer's memorandum opinion supporting her October 11,
2024 order of affirmance is published at 2024 U.S. Dist. LEXIS 185882
and 2024 WL 4476492.

7

### A. Snyder and Her Family

Snyder is the sister of George Snyder and Kash Snyder. *A653*, *A665*. In filing the Bankruptcy Case, Snyder identified George and Kash, but no one else, as "managing control persons" of U Lock. *A711*, *B235*.[1] U Lock has claimed an ownership interest in real property on U.S. Route 30 in North Huntingdon Township, Westmoreland County, Pennsylvania (the "Subject Property"), on which it previously operated a storage facility. *B207*.

Snyder has, by her own admission, "been in Court for the last 15 years." *A706*.

### B. Snyder's 2018 Statements to the Court of Common Pleas of Westmoreland County

In March 2018, Snyder wanted to file a petition in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "Westmoreland County Court"). **A676-A677**. When she learned that she would need to pay a filing fee to begin that proceeding, she filed a petition (the "IFP Petition") with that court in which she sought leave to proceed *in forma pauperis*. *A677*, *B17*. Snyder intended for that court

---

[1] "B__" refers to the corresponding page of the Supplemental Appendix that Biros is filing herewith.

to rely on her statements in the IFP Petition and allow her to file her new case without paying the filing fee. *A681*.

In the IFP Petition, Snyder checked a box that stated, "I am unemployed and receive no other income or benefits." *A678*, *B17*. Notwithstanding the form's request to provide information from any employer, she did not provide any information from U Lock. *A678*, *B17*. In the accompanying verification, Snyder identified her employer as "N/A." *A680*, *B18*. Snyder also stated that she could not obtain funds to pay the filing fee from "family and associates" or from anyone else and that she did not own any sort of property. *A681*, *B18*, *B20*.

Snyder signed the IFP Petition twice. *A678-700*, *B17, B21*. Above both signatures, the IFP Petition stated that she was making her statements pursuant to 18 Pa. C.S. § 4904, which provides criminal penalties for unsworn falsification to authorities. *Id.* Snyder read those statements before signing. *A680*. She told the Westmoreland County Court that her verification "fully and truthfully describes [her] current income and financial condition." *B17*.

The Westmoreland County Court actually relied on Snyder's statements; it granted her petition and allowed her to proceed without paying filing fees. *A681*, *B17*.

### C. Snyder's 2018 Statements to the Bankruptcy Court

Two months later, on May 15, 2018, Snyder filed a voluntary petition with the Bankruptcy Court, seeking protection pursuant to Chapter 7 of the Bankruptcy Code. *A682*, *B22-B84*. She appreciated the need to provide complete information in her petition and its accompanying schedules. *A684*. Snyder acknowledges that, at the time she filed her petition, her creditors would have wanted a true and complete statement of her assets. *A695*.

In connection with that petition, Snyder completed a "Schedule A/B," which asked her to identify her property. Question 30 of that form asked Snyder to identify "Other amounts someone owes you." As its first example of the type of information this question sought, the Bankruptcy Court's form identified "[u]npaid wages." *B39*. Nothing prevented Snyder from reading or understanding this question in 2018. *A687*. Snyder checked the box for "No." *B39*. She did not list any claim for unpaid wages anywhere else on the schedule. *A689-670*. She told

10

the Bankruptcy Court that she had financial assets of $225.00 and that the value of all her assets totaled $3,925.00. *B42*.

Snyder's Schedule I, titled "Your Income," advised her to be "as complete and accurate as possible." In it, Snyder checked the box stating that she was "Not employed." She stated that her occupation was "not applicable." She provided no information in the section of the schedule that asked her for her employer's name and address. *B66*.

Snyder signed her filings in at least two places:

- In the petition, Snyder signed underneath a declaration under penalty of perjury that the information she had provided was "true and correct" and a statement about the potential penalties for bankruptcy fraud. *A684*, *B27*.

- Snyder signed a declaration, also under penalty of perjury, that the schedules were "true and correct." *A685*, *B32*. That form also included information about the penalties for bankruptcy fraud. *B32*.

The following month, Snyder filed a "Statement of Your Current Monthly Income" with the Bankruptcy Court. *B85-B98*. In it, she reported again that she had no gross wages or salary. *B85*. Also as part of that document, she submitted a signed "Statement of No Payment Advices" that stated in its entirety, "I, Shanni Snyder, declare under the penalty for perjury that I do not have any payment advices

11

from an employer because I was not employed during 2016, 2017, or 2018." *A698, B98*.

The Bankruptcy Court discharged Snyder's debts and terminated her bankruptcy case. *A700*.

Snyder did not amend any of these schedules until the Bankruptcy Court reopened her bankruptcy proceeding in 2022. *A700*.

### D. The *Biros v. U Lock* Action

Like U Lock, Biros claimed ownership of the Subject Property. In 2017, Biros commenced the *Biros v. U Lock* action in the Westmoreland County Court. She sought a declaration of ownership and other relief. *A700*.

U Lock authorized its counsel to defend against Biros's claims. *A724*. In its verified interrogatory answers submitted in preparation for trial, U Lock stated that it had no employees. *B101*. George Snyder signed the verification for those answers. *B111*.

The Westmoreland County Court held trial in that matter on April 29, 2019. *B114-B196*. Snyder attended either trial or some other in-court proceeding. *A701-702*. Kash Snyder testified at trial that Snyder had helped U Lock and its counsel in their trial preparations. *B187*.

12

When asked about Snyder, "What involvement did she have in the company?," Kash responded, "None in the company." *B188*.

After trial, the Westmoreland County Court concluded that Ms. Biros owns the Subject Property. *A703*, *B207-B214*. U Lock appealed that decision to the Superior Court of Pennsylvania. *A703*; *B294*. Snyder knew of that appeal. *A703*.

On May 21, 2021, the Superior Court affirmed the judgment in Ms. Biros's favor. *B297*. That court denied U Lock's motion for reargument on July 28, 2021. *B298*. U Lock subsequently petitioned to the Supreme Court of Pennsylvania for allowance of appeal. *B290*.

### E. Snyder's Lawsuit in this Court

On July 14, 2021, Snyder filed a complaint against U Lock in the District Court (the "Snyder Wage Case"). *B215*. She named only U Lock as a defendant. She did not file her claim against George or Kash. *B215-B216*. She identified the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, as the only legal basis for her complaint. *B217*. The District Court docketed Snyder's complaint at No. 2:21-cv-00904-RJC and assigned it to Judge Colville.

13

Snyder claimed that she had worked for U Lock for ten hours each day, or seventy hours each week, from January 1, 2016 through February 15, 2020. She described her job as "Monitor video surveillance remotely." She claimed that she had worked from 5 p.m. to 3 a.m. every night during that period. She claimed that she was entitled to the minimum wage of $7.25 per hour and that U Lock had agreed to pay her monthly. *B217-B218*.

Snyder served U Lock with her complaint by having a friend deliver a copy of it to George Snyder. *A666*. When U Lock did not respond to her complaint, Snyder moved for default judgment. *B226*.

Judge Colville conducted a hearing on Snyder's motion for default judgment on October 18, 2021. That hearing lasted for five minutes. *B225, B232*. Judge Colville placed Snyder under oath, and Snyder testified that each of the allegations set forth in her complaint was, to her knowledge, "true and factual." When Judge Colville asked Snyder whether she wished to add anything, she volunteered under oath that her claim was based upon her assertion that she had worked for U Lock for seventy hours each week. *B227-B228*.

Judge Colville announced he would grant Snyder's motion for default judgment on the basis of Snyder's complaint and "upon consideration of your presentation here today and all the evidence that has been submitted here today."  He stated that its judgment was based upon his understanding that Snyder had "monitored video surveillance and cameras from five p.m. until three a.m. each day." *B229*.  He set damages at the $131,304 that Snyder had calculated in her complaint and her motion and doubled that amount to represent liquidated damages. *B230, B231*.

That same day, the District Court entered judgment in favor of Snyder and against U Lock for $263,104.00. *A276, B262*.

Snyder transferred her judgment to the Westmoreland County Court, *A277, B263*, but she did not attempt to collect this judgment from U Lock during 2021 or into 2022. *A673-674*.

## F. Snyder's Later Claims and Appeal

On January 19, 2022, the Supreme Court of Pennsylvania denied U Lock's petition for allowance of appeal in the *Biros v. U Lock* matter. *B292*.[2]

The following day, the Westmoreland County Court issued an Order directing delivery to Biros of deeds to the Subject Property. U Lock moved for reconsideration of that Order. *B239.*

On March 18, 2022, while U Lock's motion was pending before the Westmoreland County Court, Snyder commenced an action in that court against Ms. Biros and others – including that court's trial judge who had heard the *Biros v. U Lock* trial, the Westmoreland County Recorder of Deeds, and the Attorney General of Pennsylvania – by filing a praecipe for writ of summons. *B233*. As part of that filing, Snyder requested that the Westmoreland County Prothonotary index a *lis pendens* against the Subject Property. *A707*, *B234*.

---

[2] That court subsequently granted U Lock's motion to stay remand of the record so that U Lock could file a petition to the U.S. Supreme Court for a writ of certiorari. *B292.* U Lock never filed that petition.

### G. Snyder's Commencement of the Bankruptcy Case and Proceedings in the Superior Court

Snyder, claiming to be a creditor of U Lock, commenced the Bankruptcy Case on April 27, 2022 by filing an involuntary Chapter 7 petition. *A166*. As noted above, when Snyder amended her petition at the direction of the Bankruptcy Court, she identified her brothers George and Kash as U Lock's "managing control persons." *B235*.

On May 19, 2022, after the Westmoreland County Court judge had entered an order in *Biros v. U Lock* that purported to deny U Lock's motion for reconsideration of his January 29 Order, Snyder appeared in that matter and filed a notice of appeal. *B241, B242*. She filed those documents in person with the Westmoreland County Prothonotary (the "Prothonotary") at 10:07 a.m. that morning. *A708-709*, *B241, B242*.

Two minutes later, U Lock filed a "Notice of Bankruptcy" in the *Biros v. U Lock* matter. *B255*. U Lock advised the Westmoreland County Court that the Bankruptcy Case "appears to create an automatic stay of" that case. *B256*.

### H. Snyder's Claim, Biros's Objection, and Pre-Hearing Proceedings

Snyder filed her claim in the Bankruptcy Case on May 27, 2022. In it, she asserted that U Lock owes her $263,100.00 – *i.e.*, within $4 of

the amount of this Court's judgment in the Snyder Wage Case. She identified her claim as secured by real property, and she identified 28 U.S.C. § 3201 as the reason why her "secured" claim had been perfected. *A274*. She identified this Court's 2021 judgment in the Snyder Wage Case as the basis for her claim. *A276, A662*. Although she initially asserted that her claim was secured by a lien on property, *A276*, she has since asserted that she has no secured interest. *B302*.

Snyder has never amended or withdrawn her claim. *A157.*

Biros, who had filed three unsecured claims and a claim for administrative expenses in 2022, *A157, A752*, objected to Snyder's claim in February 2023. *A392-A405*. In responding to that objection, Snyder raised no concerns about Biros's standing or authority to raise it. *A558-A561*.

At a hearing of April 13, 2023, the Bankruptcy Court set an evidentiary hearing on Biros's objection (the "Evidentiary Hearing") for July 14, 2023. *A574-577*. By written order of the following day, that court confirmed that date, expressly permitted and set a deadline for discovery, and established other pre-hearing requirements and deadlines. *A583-585. Bankr. Doc. Nos. 365, 368.*

### I.  Snyder's Motion to Withdraw the Reference

Represented by counsel, Snyder filed the Withdrawal Motion in the Bankruptcy Court on May 19, 2023. *A586-A589.* The Bankruptcy Court transmitted that motion and Biros's response to the District Court on June 5, 2023, *A130*, and the District Court docketed the motion at Case No. 2:23-cv-00979-RJC. *A160.*

Snyder never moved to stay the proceedings in the Bankruptcy Court pending the District Court's disposition of the Withdrawal Motion. *A. 127-149.* The only references to the word "stay" in the title of any document that any person or entity filed in the Bankruptcy Case between Snyder's filing the Withdrawal Motion and the Bankruptcy Court's disposition of the claim objections relate only to third parties' efforts to quash subpoenas. *A. 127-149 at ##398, 405, 407, 408, 411. 416, 419, 444.*

Similarly, Snyder did not ask the District Court to stay or enjoin the Bankruptcy Court's proceedings on the Claim Objections.  "Stay" does not appear at all in the docket sheet for the Withdrawal Motion. *A. 159-61.*

## J. The Evidentiary Hearing

Biros and Snyder proceeded with discovery on Biros's claim objection. *B300-B329*. They filed their joint exhibit list, *A603-A608*, and their separate exhibit and witness lists, *A598-A602*, *B1-B7*, *B8-B13*. They provided supplemental briefing as the Bankruptcy Court directed. *A613-620*.

The Bankruptcy Court conducted the Evidentiary Hearing as scheduled on July 14, 2023. At it, Snyder testified that the allegations of fact underlying her claim were the same as the allegations on which she had relied in the Snyder Wage Claim. *A662-663*. She made clear that she had no basis for her claim against U Lock other than the alleged unpaid wages. *A670*.

Snyder conceded on direct examination that she had not paid constant attention to conditions on the Subject Property throughout her claimed work hours. Instead, she asserted, she had an application on her mobile telephone that alerted her about activity on video cameras pointed at the Subject Property. *A650-651*. She testified that, when she received these alerts, she called George. *A651*. Although she did not testify about how many times, or how frequently, she had received

these claimed alerts or contacted George about them between 2016 and 2020 period when she claimed to have been working, she acknowledged that she had never made any reports about the Subject Property to any law enforcement agency. *A716*.

Snyder acknowledged that, during almost her entire claimed work period, she had two children under the age of four with her on most nights. She had no professional childcare assistance. *A713*. She agreed that children of that age can require all of a parent's attention for periods of time for which the parent cannot plan. *A714*.

Snyder testified that, in calculating the amount of her claim, she did not account for any vacation or sick days at all during her four-plus year period of claimed everyday work. *A670*.

Still, she reiterated under oath that she had worked ten hours per night, every night, for 213 straight weeks. *A671*.

Snyder conceded that if, as she had asserted in her complaint, U Lock had agreed to pay her monthly, then she had known by mid-February 2016 that U Lock owed wages to her. *A672*. She also claimed that, by some time in that second month of the fifty months she claimed, U Lock had acknowledged its owing wages to her. *A672-673*.

She further admitted that she, herself, would have known by March 2018, when she filed the IFP Petition with the state court in Westmoreland County, that she was working for U Lock. *A676*. She conceded that, if her current assertions had been true, then, by the time she filed her own bankruptcy petition with the Bankruptcy Court in May 2018, she would have known that she had been working for U Lock for more than two years and was already owed more than $50,000. *A687-688*, *A696*.

As Snyder conceded, although she had friends outside of the Snyder family from 2016 to 2020 and interacted regularly during that period with the father of her younger children, she did not offer any testimony from any of those persons stating that they had seen her perform any of her claimed work. *A717-719*.

Snyder never provided U Lock with a Form W-9 or an Immigration Form I-9 from Snyder. *A727*. U Lock never issued a Form W-2 or a Form 1099 to Snyder. *A727-728*. It never obtained worker's compensation insurance that covered her. *A735*

Snyder did not offer a single document created between 2016 and 2020 that made any reference to her claimed work. *A717-718*. She did

not even claim to have had a written agreement of any sort with U

Lock. *A715*. She offered no documentary evidence about the claimed

mobile phone app, the claimed cameras, or any other aspect of the

surveillance system she claimed to have used. She offered no

contemporaneous written statements stating that U Lock owed her for

unpaid wages. *A695*, *A715*.

### K. The Dismissal Without Prejudice of Biros's Unsecured Claims

As mentioned above, the Bankruptcy Court approved Biros's

settlement with the U Lock Chapter 7 Trustee of her administrative

claim on January 8, 2024. *A145 at #523, A753*.

Shortly afterwards, on January 22, Biros moved in that court for

leave to withdraw her three unsecured claims. *A750*. She noted that

the court had recently allowed her administrative claim. *A753*. She

added that George Snyder had recently filed objections to all of her

unsecured claims. *A753*. She added, "Considering the amounts

disclosed by the Status Reports, it appears obvious that the allowed

Administrative Expense claims in the case will consume all the

remaining distributable funds and will still not be paid in full." *A755*.

Accordingly, she requested that the court approve her withdrawal of

23

two claims be without prejudice "in the event assets are located that might provide a distribution to unsecured creditors." *A754*.

In granting Biros's motion, the Bankruptcy Court expressly stated that the withdrawal was without prejudice and subject to Biros's identified contingency. *A757*.

### L. The Bankruptcy Court's Decision and Disallowance of Snyder's Claims

On February 29, 2024, the Bankruptcy Court issued a thirty-eight-page opinion, including 244 footnotes, and an order directing that Biros's objections to Snyder's claim were sustained and that Snyder's claim was disallowed. *A1-A38*.

The Bankruptcy Court's opening paragraph succinctly expressed that court's opinion of Snyder's character and conduct here:

> In ten years, the Court has never held a stronger conviction that a fraud was perpetrated upon the court as it is following an evidentiary hearing on Shanni Snyder's claim. Ms. Snyder obtained a default judgment under the Fair Labor Standards Act ("FLSA") by swearing that debtor U Lock, Inc. employed her to monitor security cameras for ten hours a day, every day, for four years without paying wages. *She lied.* First to the federal district court who awarded the judgment, and then to this Court by commencing an involuntary petition against U Lock based on a fraudulent claim. Ms. Snyder did so to frustrate creditor Christine Biros' efforts to gain control of U Lock's business premises ("Property"), which was

24

awarded to Ms. Biros by final state court orders. As explained below, the Court will disallow Ms. Snyder's claim in its entirety and initiate sanction proceedings against her to address this profound abuse.

*A1-A2* (emphasis in original; footnotes omitted).

The remainder of the opinion went no better for Snyder. The Bankruptcy Court recited the facts, including its own observations of Snyder and her brothers while they testified. That court determined that it had jurisdiction to consider Biros's objection as a core matter under 28 U.S.C. § 157(b)(2)(B) because it pertained to the allowance or disallowance of claims against the U Lock estate. *A17*. It added that Snyder's default judgment from the Snyder Wage Case was not entitled to any preclusive effect that might foreclose Biros's objections. *A17-A20*. It noted that the burden of proof rested with Snyder. *A23-A24*.

The Bankruptcy Court then concluded that the FLSA did not provide Snyder with a claim against U Lock. *A24-A27*. It noted that U Lock did not have sufficient revenues to be considered an "enterprise engaged in commerce under 29 U.S.C. § 206(a), and that, because the only persons who *might* have performed regular work for U Lock were the three Snyder siblings, U Lock fell outside the applicability of the FLSA because of the "mom and pop" exemption of 29 U.S.C. § 203(s).

25

*A24-A27* (citing 29 C.F.R. § 779.234).  It added that Snyder had not described work activities in which she had "engaged in commerce" within the definition of 29 U.S.C. § 206(a).  *A27-A28*.

The Bankruptcy Court explained why it did not believe that Snyder had been truthful in her claim or her testimony.  It pointed to the absence of any corroboration through objective or documentary evidence and found that Snyder's testimony was, in effect, engineered to work around established facts.  *A29*.  It found that her claim of a "Cal Ripken-esque" work history was implausible both on its face and in light of the realities of her life in the 2016-2020 period.  *A31*.  It also stated that it disbelieved her claim to have worked ten hours each night because her job responsibilities, as she describe them, made "as much sense as watching a phone to see if it will ring."  *A32*.  It did not accept that anyone would work the claimed amount over the claimed period in expectation of payment but without ever actually being paid.  *A32*.

The Bankruptcy Court added that it could not reconcile the claims that Snyder made with the sworn statements she had made to that court and the Westmoreland County Court in 2018, when she *now* claimed to have been working for U Lock and owed wages.  Given the

choice between those contemporaneous self-serving statements and Snyder's post hoc self-serving testimony at the Evidentiary Hearing, that court chose the former.  It found that she was too experienced and too savvy a litigant to have misunderstood simple questions in the manner she now claimed.  *A32-A33*.

The Bankruptcy Court buttressed its determination by finding that Snyder had pursued her claim (and the entire U Lock Bankruptcy Case) as "transparently a means to an end" – an artifice to create a lien on the Subject Property and use that lien to try to take the Subject Property from Biros.  In reaching this conclusion, it looked to the timing of Snyder's actions in the District Court, the Bankruptcy Court, and the Westmoreland County Court.  It also noted Snyder's seeming disinterest in the size of her judgment in the Snyder Wage Case and her complete disinterest in attempting to collect that judgment from U Lock or its principals.  *A34-A35*.

"For today," the Bankruptcy Court concluded, "it is enough to find that Ms. Snyder's wage claim was a sham and disallow it in its entirety."  *A37*.

At the same time, that Court entered an order directing Snyder to, *inter alia*, "show cause why the Court should not impose sanctions against her, including but not limited to, monetary sanctions, for asserting a fraudulent proof of claim in this bankruptcy case and lying under oath." *A40.*

Snyder appealed to the District Court, which assigned her appeal to Judge Fischer. *A42-A44.*

### M. The District Court's Denial of the Withdrawal Motion

In a text order of March 5, 2024, Judge Colville looked to the Bankruptcy Court's decision and denied the Withdrawal Motion as moot. *A47.*

Snyder, acting pro se, filed a motion for reconsideration of that dismissal on April 2, 2024. *A761-A771.*

Judge Colville denied Snyder's motion the next day. While he chided Snyder for having acted pro se while represented by counsel, he made clear that his decision was on the merits. *A161.*

Snyder, again acting pro se, filed the appeal now pending before this Court at No. 24-1842. *A49.*

## N. The District Court's Affirmance on the Merits

After briefing in which Snyder was represented by counsel, *A162*, Judge Fischer affirmed the Bankruptcy Court's disallowance of Snyder's claim by order of October 11, 2024. *A72*.

Judge Fischer held that Biros had constitutional and statutory standing to make her objections to Snyder's claims. *A57-A60.* She also held that the Bankruptcy Court had jurisdiction to consider Biros's objections and that Snyder's filing of the Withdrawal Motion had not stripped that court of that jurisdiction. *A60-62.* She agreed with the Bankruptcy Court that Snyder's default judgment against U Lock from the Snyder Wage Case was not entitled to any preclusive effect in this proceeding. *A62-64.*

Turning to the merits of the appeal, Judge Fischer pointed to the District Court's standard of review and held that there was no basis to set aside any of the Bankruptcy Court's findings. *A67.* She added that the Bankruptcy Court was better-positioned than she was to assess Snyder's and her brothers' credibility. *A67-70.*

In concluding that the District Court should affirm the Bankruptcy Court's decision, Judge Fischer added own words of caution:

> [T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

*A70-71* (quoting, indirectly, *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, (1944))*.*

As with the Withdrawal Motion, Snyder then abandoned her counsel and filed a *pro se* motion for reconsideration. *A774-78.* Like Judge Colville, Judge Fischer held both that Snyder could not act pro se while represented by counsel and that the motion, itself, failed on the merits. *A73.*

Snyder then filed the appeal that this Court docketed at No. 24-3134. *A74.*

The Bankruptcy Case remains open. The Trustee has not filed a Trustee's Final Report. *A76-156.*

## SUMMARY OF ARGUMENT

Snyder cannot avoid the Bankruptcy Court's considered judgments that her claim is fraudulent and that she lied, repeatedly and in multiple courts, in her effort to create that claim.

Snyder cannot avoid those judgments by pointing to "standing" or "mootness." When Biros objected to Snyder's claim, they were both holders of unsecured claims. The potential remains for payments to unsecured creditors, and Biros remains capable of collecting on such a claim. Certainly, Snyder's strenuous efforts to restore her claim, rather than simply abandoning it, belies her insistence that her claim has no value.

Snyder cannot avoid these judgments by arguing that the Bankruptcy Court somehow lacked the power to make them. When Snyder filed her claim, she necessarily consented to that court's having the power to determine whether her claim was valid. The Bankruptcy Code was the sole authority for her attempt to recover against the U Lock estate. This was not a "*Stern*" claim in which a bankruptcy court was involved only because of the pendency or relationship of a bankruptcy case or parties involved in a bankruptcy case.

31

Snyder cannot avoid these judgments by claiming that her claim was somehow shielded from attack by res judicata or collateral estoppel related to the fraudulent judgment that she obtained against U Lock in the Snyder Wage Case. Biros was not a party to that proceeding and lacked all privity with any person or entity who was. Moreover, as U Lock's management chose to let their sister take a default judgment, Snyder cannot claim that the earlier proceeding resulted in the litigation on the merits of any fact related to her claim here.

Finally, Snyder has no chance whatsoever of avoiding these judgments on the merits. The Bankruptcy Court chose strong words, but it supported its findings and conclusions with dozens of pages and hundreds of footnotes. It explained why it chose not to credit Snyder or her brothers. In doing so, that court looked not only to their mannerisms but to Snyder's and her brothers' contemporaneous statements that contradicted almost every potentially relevant aspect of their testimony here. In pointing to some of that testimony, Snyder regularly overlooks or attempts to wish away one critical fact that appears at page *A1* of her appendix here: "*She lied.*"

ARGUMENT

### A. Standard of Review

When the District Court sits as an appellate court for the Bankruptcy Court, "our review duplicates that of the district court and we view the bankruptcy court decision unfettered by the district court's determination." *In re Energy Future Holdings Corp.* 990 F.3d 728, 736 (3d Cir. 2021) (citing *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991)). Thus, this court "review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof." *In re Am. Classic Voyages Co.*, 405 F.3d 127, 130 (3d Cir. 2005) (quoting *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999)).

### B. Biros Had Standing To Object to Snyder's Claim.

To establish standing in an Article III court, "a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 599 U.S. 670, 676 (2023) (citing *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560-61 (1992)).

Perhaps most importantly here, standing is determined as of the time that the plaintiff commences the proceeding. *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023) (citing *Davis v. Federal Election Comm'n*,

33

554 U.S. 724, 734 (2008)).  *See also George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 238 (3d Cir. 2024) (same).

Biros had standing to object to Snyder's claim.  *See In re Wilton Armetale, Inc.*, 968 F.3d 273, 281-82 (3d Cir. 2020).  When Biros filed her objections in February 2023, both she and Snyder had pending claims, including unsecured claims, against the U Lock estate.  The pendency of Snyder's claim had the potential to reduce Biros's proportion of any distributions to creditors.  It also created the potential for Snyder to complicate the administration of the U Lock estate.  Biros sought relief that (a) the Bankruptcy Court was authorized by statute to give and (b) would, if granted to her, correct the problem about which she complained.

The District Court pointed out that Snyder could waive any other standing-based defenses here.  *A58* (citing *In re Imerys Talc Amer., Inc.*, 38 F.4th 361, 374 (3d Cir. 2022)).  As that court noted, Snyder never submitted any argument to the Bankruptcy Court that the presence of the Chapter 7 Trustee might preclude Biros from objecting to her claim.  *A558-61*.

34

Waiver or not, Section 502(a) of the Bankruptcy Code, 11 U.S.C.
§ 502(a), gave Biros authority to object to Snyder's claim. That section
allows a "party in interest" to make an objection. *Id.* The leading
bankruptcy treatise, looking to decisional law within this Circuit, notes,
"[T]he right of a creditor to object to the allowance of another creditor's
claim should be undisputed." 4 *Collier on Bankruptcy* ¶ 502.02[d] (16th
ed.) (citing *In re Weinstein Co. Holdings*, 595 B.R. 455 (Bankr. D. Del.
2018); *In re Mechanicsburg Fitness, Inc.,* 592 B.R. 798 (Bankr. M.D. Pa.
2018)). Biros, as a competing claimant, was therefore authorized to file
her objection.

Nothing has mooted this dispute. Snyder still clearly considers
herself to be a "person aggrieved." *See In re Combustion Engineering,
Inc.*, 391 F.3d 190, 214-15 (3d Cir. 2004) (describing standard for
bankruptcy appellate standing). As matters now stand, she does not
have any claim against the U Lock estate. She appears to want one.
The only possible benefits to her of that claim are the Bankruptcy-
Court-acknowledged possibility that U Lock's unsecured creditors may
be paid something on their claims and the potential to further impact
the administration of the Bankruptcy Case to Biros's detriment. *A757.*

35

In fact, that potential remains, and Snyder and her family are central to it. George Snyder's appeal pending before this Court attacks the Bankruptcy Court's approval of Biros's administrative expense claim. *A145 at #523, A146 at #532, A155 at #606.* As Biros noted in that court, that approval was (with the prospective expense and annoyance of addressing the objections that George had just filed) a primary motivation for her seeking to withdraw her additional claims. *A755.* This Court's reversal of that approval, however unlikely, would affect whether any funds were available to the unsecured creditors.

The Bankruptcy Court's standing show-cause order to Snyder with regard to its strongest-ever "conviction that a fraud was perpetrated on the court" both raises a real possibility that the U Lock estate will acquire additional assets and highlights the administrative risks of letting Snyder back in with a bogus claim. *A1, A37-38.*

If Snyder truly believes that her unsecured claim is as worthless as she tells this Court it is, she is free to move to dismiss this appeal, even if her making that motion seems unlikely and Ms. Biros reserves the right to respond about the conditions on which this Court might

grant it. *See* Fed. R. App. P. 42(b). However, the doctrine of standing does not prevent this Court from proceeding to the merits.

### C. The Bankruptcy Court Had Jurisdiction To Resolve Biros's Objections to Snyder's Claims.

#### 1. *The Bankruptcy Court Had the Power to Adjudicate Biros's Objections.*

Snyder must live with the decision of the Bankruptcy Court. That court had the power under Article III of the U.S. Constitution to consider Biros's objections to Snyder's claim and to issue the order from which Snyder appeals. Also, it may "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1).[3] "Core proceedings" include "allowance or disallowance of claims against the estate." *Id.* at § 157(b)(2)(B).

This subject-matter jurisdiction holds, even where resolution of a claim objection may involve a question of federal law not arising under the Bankruptcy Code. The Supreme Court has consistently held that a person filing a claim in a bankruptcy case has consented to the bankruptcy court's making all determinations necessary to addressing

---

[3] *See also* 28 U.S.C. § 157(a); Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (W.D. Pa. Oct. 16, 1984).

the validity of that claim. "[S]he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Katchen v. Landy*, 382 U.S. 323, 333 n.9 (1966) (quoting *Gardner v. New Jersey*, 329 U.S. 565, 573 (1947)).

The Court has hewn to this rule of consent in its post-1978 decisions concerning the limitations that Article III places on the powers of the bankruptcy courts. *See Stern v. Marshall*, 564 U.S. 462, 495-97 (2011) (distinguishing *Katchen* and reversing bankruptcy court adjudication of counterclaim because, on facts before it, "there was never any reason to believe that the process of adjudicating Pierce's proof of claim would necessarily resolve Vickie's counterclaim"); *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power."); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 n.14 (1989) ("As *Katchen* makes clear, however, by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims, even though the

38

debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate.").[4]

Here, of course, the proceedings in the Bankruptcy Court concerned Snyder's claim, which she had voluntarily submitted against U Lock's estate.  The Bankruptcy Court had all the power it needed to determine the validity of that claim.

Independently of Snyder's consent to bankruptcy-court adjudication of any claim, Snyder's claim against the U Lock estate simply did not present a "*Stern* claim" that might have required resolution by this Court.  This Court has explained the contours of the Supreme Court's *Stern* decision:

> The Court in *Stern* found that the provision unconstitutionally delegated the judicial power of the United States to non-Article III bankruptcy judges. Justice Roberts's opinion relied heavily on *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284, 15 L. Ed. 372 (1855), which stated that with the

---

[4] *See also In re Winstar Communs., Inc.*, 554 F.3d 382, 406 (3d Cir. 2009) (noting that party submitting claim also submits self to equitable jurisdiction of bankruptcy court); *In re Pasquariello*, 16 F.3d 525, 529 (3d Cir. 1994) (describing *Granfinanciera* as "articulat[ing] a three-part test for determining when a person **who had not submitted claims against a bankruptcy estate** was entitled to a jury trial" (emphasis added)).

exception of certain "public rights," Congress cannot "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at common law, or in equity, or admiralty." Because the counterclaim at issue in Stern was a tort claim at common law, the Court held that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on [this] state law counterclaim." *Stern*, 131 S. Ct. at 2620.

. . . . However, *Stern* did not consider the authority of bankruptcy judges to make final determinations regarding other kinds of claims and counterclaims brought by debtors and creditors . . . .

*One2One Communs., LLC v. Quad/Graphics, Inc.*, 805 F.3d 428, 433 (3d Cir. 2015).[5]

Neither Snyder's claim nor Biros's objection to it arose under the common law of any state.  Snyder's authority to file her claim arose under Section 501(a) of the Bankruptcy Code, 11 U.S.C. § 501(a).  Biros made her objection pursuant to 11 U.S.C. § 502.  *A392*.  In Snyder's claim, Snyder identified only 28 U.S.C. § 3201 as her basis for that claim and attached only a copy of her judgment abstract from this Court

---

[5] Since *Stern*, the Supreme Court has made clear both that a district court may hear and issue proposed findings of fact on any Stern claim *and* that a district court may review a bankruptcy court's purported adjudication of a *Stern* claim so long as it does so on a *de novo* basis. *See Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 38-40 2014).  However, there is no occasion for *de novo* review here.

as support. *A274, A276.* That judgment arose from claims that Snyder

asserted under the FLSA; she did not point in her complaint in the

Snyder Wage Case to any state statute, let alone to state common law.

*B215-B223.* Accordingly, the Bankruptcy Court had power under the

U.S. Constitution to reject Snyder's claims.[6]

### 2. Snyder's Withdrawal Motion Did Not Strip the Bankruptcy Court of Its Power to Adjudicate Biros's Objections.

Rule 5011(c) of the Federal Rules of Bankruptcy Procedure

prescribes, "The filing of a motion for withdrawal of a case or

proceeding . . *shall not stay* the administration of the case or any

proceeding therein before the bankruptcy judge . . . ." (emphasis added).

Nothing in that rule or any other statute or rule provides for an

automatic stay pending disposition of a motion for withdrawal.

---

[6] There were also no issues with the Bankruptcy Court's procedure that might give Snyder a second chance here. She filed her claim in February 2023. *A392-A405.* The Bankruptcy Code empowers bankruptcy courts to give notice and hold a hearing on an objection to a claim. 11 U.S.C. § 502(b). The Bankruptcy Court gave notice in April 2023 that it would conduct a hearing that July. *A583-A5865, A576-A577.* It held its hearing as scheduled. *A636-A749.* Prior to hearing any evidence, that court made clear that Snyder would bear the burden of proof. *A646.* Subsequent to that hearing, Snyder submitted a brief to that court. *Bankr. Doc. No. 497.*

However, Rule 5011(c) expressly authorize a motion to stay the bankruptcy court proceedings while a motion to withdraw is pending. That rule identifies the bankruptcy court as the preferred forum for a stay motion.

As both courts below correctly noted, Snyder never moved in any court to stay the proceedings on Biros's objections. *A17* at n.136, *A63*. Snyder failed to move for a stay at any time during the approximately three months between Biros's filing her objection and Snyder's filing her motion for withdrawal, *A392*, *A586*; during the two months between her filing that motion and the Bankruptcy Court's conducting its hearing, *A586*, *A636*; or during the more than seven months between the Bankruptcy Court's hearing and its issuance of its decision disallowing Snyder's claim, *A636*, A1.

Once the Bankruptcy Court sustained Biros's motion and disallowed Snyder's claim, Snyder's failure to seek a stay mooted her argument about any sort of withdrawal of reference. The Bankruptcy Court was a court of appropriate jurisdiction, and it had completed all of its possible proceedings on Biros's objections. *See In re Pruitt*, 910 F.2d 1160, 1169 (3d Cir. 1990). Nothing stripped the Bankruptcy Court

of its power to hear Biros's objections and disallow Snyder's claim, and

this Court's proper course here is appellate review and affirmance.[7]

### D. Biros's Objections Are Not Precluded by the Default Judgment Snyder Procured in an Action to Which Biros Was Not a Party.

#### 1. As Biros is Not in Privity with U Lock, Neither Collateral Estoppel nor Res Judicata Is Applicable.

For res judicata, or claim preclusion, to apply, "the parties in the

later action must be identical to or in privity with those in the prior

action." *Federated Department Stores v. Moitie*, 452 U.S. 394, 398,

(1981). This same requirement applies to issue preclusion under

collateral estoppel. *Board of Trustees of Trucking Employees of New*

---

[7] Even if Snyder's motion to withdraw were not moot, this Court should have denied it on the merits. Mandatory withdrawal "should be granted only if the current proceedings before the Bankruptcy Court cannot be resolved without substantial and material consideration" of the non-bankruptcy federal statute. *In re White Motor Corp.*, 42 B.R. 693, 704 (N.D. Ohio 1984). *See also In re Nortel Networks, Inc.*, 539 B.R. 704, 708 (D. Del. 2015) (requiring for mandatory jurisdiction that consideration of non-bankruptcy federal law be necessary, substantial, and material, citing *White Motor*); *Seitz v. Rothermel*, 638 B.R. 846, 849-50 (E.D. Pa. 2022) (looking to *White Motor* in denying mandatory withdrawal). The outcome here demonstrates why mandatory withdrawal was inappropriate. The Bankruptcy Court's most prominent independent basis for its decision – that Snyder had lied throughout the Snyder Wage Case and the Bankruptcy Case – required no FLSA subject-matter expertise.

*Jersey Welfare Fund, Inc. – Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992).

Biros was not a party to the Snyder Wage Case. *B215.*

Biros is not otherwise precluded from pursuing her objection. There are six exclusive situations in which a non-party may be bound to a prior judgment or collaterally estopped:

(1) Where the non-party agrees to be bound by the determination of issues in an action between others;

(2) Where there is a pre-existing substantive legal relationship between the party to a judgment and the non-party (*i.e.*, assignee and assignor);

(3) Where a non-party was adequately represented by someone with the same interests who was party to the suit;

(4) If the non-party assumed control over the litigation in which the judgment was rendered;

(5) If the party bound by a judgment attempts to relitigate the matter through a proxy; and

(6) If a special statutory scheme otherwise consistent with due process expressly forecloses successive litigation by non-parties.

*Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (res judicata); *Doe v. Hesketh*, 828 F.3d 159, 172 (3d Cir. 2016) (collateral estoppel).

None of these exceptions applies here. Biros did not agree to be bound by the determination of issues in the Snyder Wage Case. There

44

is no legal relationship between Biros and U Lock.  Biros was not
adequately represented by someone with the same interests who was
party to that suit.  To the contrary, U Lock never even appeared, and its
interests, or at least the interests of its controlling members, have
always been directly opposed to Biros's interests.  Biros did not assume
control over the Snyder Wage Case, and Biros is not acting here as
U Lock's proxy.  Finally, no statutory scheme has foreclosed Biros's
ability to litigate the objection to Snyder's claim.

Snyder's attempt to bind Biros to the "Order for Relief" in the
Bankruptcy Case also fails.  Because Snyder never raised that
argument in the Bankruptcy Court, *A558-A561*, *Bankr. Doc. No. 497*,
she has waived it.  *See In re Titus*, 916 F.3d 293, 302 (3d Cir. 2019).  At
least as importantly, Snyder knows or should know that Biros was not
in privity or a party to the Bankruptcy Court's decision to enter that
order.  28 U.S.C. § 303(d) authorizes only a debtor or, with limitations
that are irrelevant here, a "general partner in a partnership debtor," to
answer an involuntary petition.  Fed. R. Bankr. P. 1011(a), captioned
"Who May Contest Petition," is to the same effect.  Tellingly, the
Bankruptcy Court's order referred only to the lack of any response from

U Lock. *B330*. There is, accordingly, no potential here for preclusion

against Biros.

### 2. As the Issues Here Were Not Actually Litigated in the District Court, Collateral Estoppel Is of No Application.

Even if privity had been present here, Snyder would still be wrong

in her assertion that she could benefit from collateral estoppel.

Application of that preclusion requires that the issue have been

"actually litigated" in the earlier proceeding and that the issue have

been determined by a final and valid judgment. *Peloro v. United*

*States*, 488 F.3d 163, 174-75 (3d Cir. 2007). With exceptions not

applicable here, [8] "a default judgment has no collateral estoppel effect."

*In re MacMillan*, 579 F.2d 289, 293 (3d Cir. 1978).

Judge Colville, who granted Snyder's motion for default judgment

in the Snyder Wage Case, had previously and correctly explained a

district court's treatment of the pleaded facts during a hearing after the

clerk has entered a default:

---

[8] As the Bankruptcy Court noted, the default judgment in the Snyder Wage Case was not entered as a sanction because a defendant appeared, participated, and then deliberately acted to present a resolution. *A19* (citing *In re Masdea*, 307 B.R. 466, 473 (Bankr. W.D. Pa. 2004)). Instead, U Lock was served but failed to appear at all.

> "Upon entry of default against a defendant, the 'well-pleaded' facts alleged in the complaint (except those relating to damages) must be taken as true." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 439 (E.D. Pa. 2006) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990)).

*Gen. Nutrition Inv. Co. v. Ingrounds Pro, Inc.*, No. 2:20-cv-00022-RJC, 2020 U.S. Dist. LEXIS 60766, at *3 (W.D. Pa. Apr. 7, 2020). Thus, a district court makes (and Judge Colville made) no determinations as to the truth or falsity of the alleged facts that concern liability. Similarly, a district court's clerk enters a default not on proof of any fact or merit of the case, but "solely on the fact that the default has occurred." *Arrington v. Sweet Home Primary Care*, 2022 U.S. Dist. LEXIS 151825 at *4 (E.D. Pa. Aug 24, 2022).

At the damages hearing on Snyder's default judgment, Judge Colville correctly proceeded on the assumption that Snyder had worked for U Lock during the claimed period and that she actually worked the alleged hours. Snyder's brief testimony there related to damages that she requested, but it did not establish that Snyder had been an employee of U Lock at any time.

Biros's objection thus required Snyder to prove *for the first time* that she had actually worked for U Lock as alleged. The Bankruptcy

Court sought to determine whether Snyder's allegations of employment are fraudulent and/or contradicted by her repeated statements to this court and to the Pennsylvania state courts. Neither of these issues were litigated or discussed in the Snyder wage case – nor could they have been, as U-Lock did not appear and no other creditors of U-Lock were given notice of that Action. For this reason as well, collateral estoppel does not preclude Biros from pursuing this objection.

### 3. *Res Judicata Does Not Operate in the Event of Fraud.*

In recognizing that res judicata may apply to judgments obtained by default, the Supreme Court has been careful to exclude any judgment where fraud or collusion is involved. *See Riehle v. Margolies*, 279 U.S. 218, 225 (1929) ("A judgment of court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default"); *In re Romano*, 378 B.R. 454, 466 (Bankr. E.D. Pa. 2007) (quoting *Riehle*).

Biros's objection to Snyder's claim was based primarily on the argument that Snyder's claim and previous representations to the District Court were fraudulent. The exception to res judicata applies where there is fraud *or* collusion. The Bankruptcy Court expressly

found fraud and identified substantial reason to believe that collusion
had occurred.  *A36-A37.*  Under these circumstances, res judicata
cannot attach here.  Neither that doctrine nor collateral estoppel
prevented Biros from pursuing her objection.

### E. This Court Should, Like the District Court, Affirm the Bankruptcy's Court's Disallowance of Snyder's Claims.

> "For today, it is enough to find that Ms. Snyder's wage claim was a
> sham and disallow it in its entirety."
> *– A37*

Snyder spends remarkably little time discussing the merits of her
claim or of Biros's objections.  This decision is probably wise, as the
Bankruptcy Court's opinion is unimpeachable.

#### 1. *The Bankruptcy Court Properly Placed the Burden on Snyder to Prove the Validity of Her Claims.*

The burden of persuasion on a claim in bankruptcy is always on a
claimant.  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174 (3d Cir. 1992).
As the Bankruptcy Court noted, the burden of production shifts.  A
claimant must first set forth facts sufficient to state a valid claim.  If
she does so, then an objector must produce evidence that could refute
some necessary element of that claim.  If the objector does so, the
claimant must prove her claim by a preponderance of the evidence.  *Id.*
at 173-74.

The Bankruptcy Court looked to *Allegheny Int'l* and correctly placed the burden of proof on Snyder to prove her claim rather than on Biros to disprove it. *A23*. It held that this burden had always remained with Snyder and that the presumption of validity had never arisen because the Snyder Wage Case judgment on which Snyder relied was always inconsistent with and contradictory to Snyder's contemporaneous statements that she made to that Court and the Westmoreland County Court under penalty of law. *A23-A24*.

This allocation to Snyder of the burden of persuasion was correct. When asked to provide the "basis of the claim," Snyder offered nothing more than a citation to a statute and a copy of an abstract of judgment. *A273-A277*. If that court had come to a different conclusion about Snyder's pleading, Biros clearly pleaded facts sufficient to overcome any presumption. The body of Biros's objection was fourteen pages long, *A392-A405*, and she incorporated almost 300 pages of exhibits, including several documents that became exhibits at the Bankruptcy Court's hearing. *Bankr. Doc. No. 340*. Regardless of whether Snyder rooted her claim in the judgment she obtained by fraud or by her false claims to have performed work, the Bankruptcy Court was correct.

50

### 2. The Bankruptcy Decision That Snyder Lied Throughout Her Involvement with That Court and This Court Is Sufficiently Supported by the Evidence.

A reviewing court could hardly ask for more thorough documentation of the reasons for a decision than the Bankruptcy Court provided here. *See A1-A38.* That court provided clear statements of fact, extensive citations to testimony and other evidence of record, and legal support for its stated conclusions. It should suffice here to summarize some of the evidence that supports that court's conclusion:

- Snyder claimed to have worked for U Lock for ten hours per night, every night, from the beginning of 2016 until mid-February 2021. *B218.*

- Snyder did not offer a contract, any other writing, or the testimony of any third party confirming that she had performed any work at all for U Lock.

- In April 2018, Snyder filed an application for leave to proceed in forma pauperis in the Court of Common Pleas of Westmoreland County, Pennsylvania. In that application, Snyder stated under penalty of law that she was not employed. *B17-B18.*

- In May 2018, Snyder filed her own petition in the Bankruptcy Court under Chapter 7 of the Bankruptcy Code. In her petition and the supporting schedules, Snyder stated under penalty of perjury that she did not have a job and was not owed any wages. *B39, B66.*

- A few weeks after filing her petition in the Bankruptcy Court, Snyder again told that court under penalty of perjury that she

had monthly gross wages of $0 and that she had not been employed during 2016, 2017, or 2018. *B85*, *B98*.

- Throughout her claimed employment, Snyder had at least partial custody of and responsibility for minor children. She became a parent of twins at about the time she claims to have begun her work for U Lock. *A652, A713.*

- In the *Biros v. U Lock* litigation in the Westmoreland County Court, U Lock stated in discovery that U Lock had no employees. *B101*. Snyder's brother Kash Snyder –a U Lock officer – testified at trial that, except for her participation in the company's defense, Snyder had not been involved in the company. *B187-B188*.

- Snyder filed the Snyder Wage Case within a month of the Superior Court of Pennsylvania's affirmance of the Westmoreland County Court's decision that Biros owns the Subject Property. *B215-B223*, *B225*, *B297*.

- Snyder filed the Snyder Wage Case against U Lock only. Although she used a pre-printed form that advised her of the opportunity to name individuals as defendants to FLSA claims, she did not sue either George Snyder or Kash Snyder. *B215-B216*.

- Snyder was aware that U Lock had no money. She did not care how big her claim against the U Lock estate may be, so long as she has a claim. *A695*.

- Snyder never made any effort to execute on her judgment against U Lock. She recorded that judgment as a claimed lien on the Subject Property but otherwise sat on it. *A673*.

- Snyder commenced the U Lock Bankruptcy Case only after the Supreme Court of Pennsylvania had declined review and U Lock faced an unfavorable decision on Biros's efforts to take possession of the Subject Property. *B292*.

To make matters worse for Snyder, the Bankruptcy Court found her efforts to explain away these facts to be little more than word games and semantics. *A12*.

This evidence is more than enough foundation to support the disallowance of Snyder's claim.

Perhaps because this evidence is so overwhelming, Snyder never really challenges whether the Bankruptcy Court's decision had adequate support. Instead, she offers that the Bankruptcy Court erred in its credibility judgments. This Court has noted, however, that the Bankruptcy Court is "best positioned to assess the facts, particularly those related to credibility and purpose." *In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007).

This appeal is hardly the rare one in which this Court should disregard credibility determinations. The Bankruptcy Court did not simply state bare conclusions about Snyder and her brothers. It explained those determinations in detail. It noted, "Not a scintilla of objective or documentary evidence supports [Snyder's] wage claim, and her own contemporaneous declarations unequivocally deny that she was employed or owed wages." *A29*. It stated that the substance of Snyder's

testimony was incredible on its face. *A31*. It discussed the extensive differences between Snyder's testimony and the irrefutable evidence. *A28-A38*. It offered compelling reasons for why Snyder and her siblings would lie. *A35*.

The Bankruptcy Court made explicit that its observation of Snyder's and her brothers' physical mannerisms during its evidentiary hearing supported its conclusion that they were not telling the truth. *A10* (Snyder "appeared defiant, self assured that no matter how dubious, no one could disprove anything she said."), *A14* ("The Court presumes that George's apparent discomfort stemmed from the fact that he already testified many times here and in the Trial Court that U Lock did not have employees."), *A16* ("The most remarkable moment involved an extended back and forth over whether [Kash Snyder] remembers testifying minutes earlier that he has trouble remembering."). However, that court was clearly much more impressed by the disparity between the Snyders' testimony and all documentary and previous testimonial evidence. The Bankruptcy Court could hardly have done more to substantiate its conclusion that Snyder's and her siblings' testimony was entitled to little or no weight.

54

### 3. The Bankruptcy Court Was Correct in Holding that the Fair Labor Standards Act Never Provided Snyder with a Claim.

While the question of whether the FLSA could ever have covered Snyder's claim was mooted by the obvious conclusion that, on the facts, Snyder had lied and had no such claim, the Bankruptcy Court was also correct that Snyder never proved the factual prerequisites to her claim. The FLSA protects "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). "Employment may be covered under the Act pursuant to either 'individual' or 'enterprise' coverage." *Tony & Susan Alaimo Found. v. Secretary of Labor*, 471 U.S. 290, 295 n.8 (1985).

There is no evidence in the record that would establish FLSA protection for Snyder either individually or because U Lock was the type of "enterprise" described in the FLSA. Despite calling U Lock's managing shareholder as a witness, Snyder offered no evidence that the corporation had the "annual gross volume of sales base or business done" of $500,000.00 or more needed to qualify it as an "enterprise engaged in commerce." 29 U.S.C. § 203(b).

The Bankruptcy Court also relied on substantial evidence in holding that U Lock was within "mom and pop" exemption of 29 U.S.C. § 203(s). Snyder and her brothers did provide some potentially relevant testimony about U Lock's operations. However, as noted above, the Bankruptcy Court concluded that each of those witnesses had lied, disregarded their testimony, and provided an extensive explanation of why it was doing so.

Snyder also offered no evidence that, in her claimed work activities, she, herself, was "engaged in commerce" as opposed to engaged in activity that only "affected" commerce. *See Mitchell v. Lublin, McGraughy & Assoc's*, 358 U.S. 207, 211 (1959); *Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 225 (3d Cir. 1991) (announcing opinion of court) (citing *Mitchell,* 358 U.S. at 211). That analysis focuses "on the activities of the employees and not on the business of the employer." *Wirtz v. F.M Sloan, Inc.*, 411 F.2d 56, 58 (3d Cir. 1969) (quoting *Mitchell*, 358 U.S. at 211, 213).

While Snyder is correct that watchmen and guards may be covered by the FLSA, *see* 29 C.F.R. § 779.115, her claim to that status is an insult to everyone who actually holds those jobs. Those men and

56

women "watch" or "guard" something – with diligence, or else they are fired.  At best, Snyder generally went about her affairs from any number of locations and waited for her phone to talk to her.  On the rare occasions when Snyder received an alert, she contacted only George.  *A651*.  Her activities did not extend as far as the North Huntingdon police department, let alone to another state.  *A715*.  She never spoke with anyone outside U Lock as part of her duties.  She did not sell, rent, or make, and she did not support anyone who sold, rented, or made.  Under these circumstances, she could not claim the protection of the FLSA.

### 4. *Snyder Neither Asserted nor Proved Any Amount Less Than Her Total Claim.*

In submitting that the Bankruptcy Court should have given her something notwithstanding her lies, Snyder ignores the reality of what happened here.  The Bankruptcy Code authorizes objections to claims against the bankruptcy estate.  11 U.S.C. § 502(a).  Biros objected to Snyder's claim.  *A392-A405*, **Bankr. Doc. No. 340**.

Throughout the proceedings on Snyder's objection and even in her appellate briefs, Snyder has never identified any amount other than the full amount of her claim to which she believes she is entitled.  Instead

and despite bearing the burdens of production and persuasion here, she continues to toss out vague statements about "some amount." **Bankr. Doc. No. 497**.  At the same time, she continues to insist that she is entitled to her claim in its full stated amount. *Snyder Brief at 66*.  The absence of a meaningful alternative only emphasizes that the Bankruptcy Court was correct to disallow Snyder's claim in its entirety. This Court should affirm that court's decision.

## CONCLUSION

In the face of an overwhelming opinion finding that she lied and committed fraud, Snyder has resorted to meritless arguments not directed to the substance of this dispute.  Thus, for all of the reasons stated above, Biros respectfully requests that this Court affirm the orders and judgments of the Bankruptcy and District Courts and award her all other relief that this Court deems to be appropriate.

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

Dated: May 23, 2025

By: */s/ Stuart C. Gaul, Jr.*
Stuart C. Gaul, Jr., Esq.
Pa. I.D. No. 74529
BERNSTEIN-BURKLEY, P.C.
601 Grant Street
9th Floor
Pittsburgh, PA 15219
(412) 456-8100  Telephone
(412) 456-8135  Facsimile
sgaul@bernsteinlaw.com

*Counsel for Appellee,*
*Christine Biros*

## <u>COMBINED CERTIFICATIONS</u>

I, Stuart C. Gaul, Jr., hereby certify as follows:

1.     **<u>Bar Membership.</u>**  I certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

2.     **<u>Word Count and Typeface.</u>**  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,310 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, ver. 16.83 in 14-point, Century.

3.     **<u>Service.</u>**  I certify that on the 23rd day of May 2025, I am filing this brief with the Clerk of United States Court of Appeals for the Third District via the Court's CM/ECF system, which will cause service on all counsel and parties of record, who are registered as CM/ECF users.

4.    **Identical Compliance of Brief.**  The text of the electronically filed brief and the text of the paper copies are identical.

5.    **Virus Check.**  A virus check has been performed on the PDF file containing the brief.   The virus check was completed using SentinelOne, and no viruses were found.

Dated: May 23, 2025                  */s/ Stuart C. Gaul, Jr.*_____