# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### In re: U LOCK INC.,

Debtor.

**SHANNI SNYDER,**

Appellant,

**v.**

**CHRISTINE BIROS,**

Appellee.

---

On Appeal and/or Petition for Writ of Mandamus as to the Orders of March 5, 2024 dismissing as moot the motion to withdraw the reference, and April 3, 2024, denying reconsideration entered by the United States District Court for the Western District of Pennsylvania, Case 2:23-cv-00979-RJC (Hon. Robert J. Colville, U.S.Dist. Judge)

and on Appeal from the Orders of October 11, 2024, affirming the Order of the bankruptcy court and November 9, 2024, denying reconsideration entered by the United States District Court for the Western District of Pennsylvania, Case 24-CV-00478 (Hon. Nora B. Fischer) affirming the Order of the United States Bankruptcy Court for the Western District of Pennsylvania at 22-bk-20823 (Hon. Gregory Taddonio, U.S.Bk. Judge)

---

## REPLY BRIEF FOR APPELLANT OR, IN THE ALTERNATIVE, REPLY IN SUPPORT OF THE PETITION FOR WRIT OF MANDAMUS

**Shanni Snyder**
**14390 Route 30**
**Irwin PA 15642**
**(412) 758-1371**
**shannis@pm.me**

**APPELLANT/PETITIONER**

1

**TABLE OF CONTENTS**

Argument.................................................................................... 4

Conclusion................................................................................. 24

Combined Statements................................................................ 26

**TABLE OF CITATIONS**

<u>**Constitution**</u>:

Article I of the United States Constitution.............................. passim

Article III of the United States Constitution............................ passim

Statutes:

*Fair Labor Standards Act*, 29 USC 203, et seq. ....................... passim

11 USC 502(b)........................................................................ passim

11 USC 704(a)(5)....................................................................4, 10

28 USC 157(d)........................................................................ passim

28 USC 1291............................................................................  16

28 USC 2106........................................................................... 8

<u>**Rules:**</u>

Federal Rule of Bankruptcy Procedure 5011.................................. 19

Federal Rule of Bankruptcy Procedure 9033.......................19,20, 25

Federal Rule of Evidence 201(d)..................................................... 22

<u>**Cases**</u>:

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013)....................... 5

*Alvarez  v. Smith*, 558 U.S. 87, 92 (2009)......................................... 5

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71–72 (1997)........... 9

*Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977).................................... 9

*Biros v. Snyder*, No. 25-1845 (pending)............................................ 5

*City of L.A. v. Lyons*, 461 U.S. 95, 101-02, 108-09 (1983)................. 8

*Cadle Co. v. Mangan (In re Flanagan),*
  503 F.3d 171, 179 (2d Cir. 2007)............................................... 14

*Diamond v. Charles*, 476 U.S. 54, 62 (1986)...................................... 9

*Gray v. Bd. of Trustees of Univ. of Tenn.*, 342 U.S. 517 (1952)........... 8

*Gratiot County State Bank v. Johnson*, 249 U.S. 246 (1919)...,.......... 21

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).............. 14

*In re: Bressman*, 874 F.3d 142, 150 (3d Cir. 2017).......................... 23

*In re: Simmons*, 200 F.3d 738 (11th Cir. 2000)................................17

*In re: U Lock,*
  22-20823 (Bk. W.Pa.), Entry 524, page 7 (1/10/2024)............. 5

*In re: U Lock*, 2023 WL 308210 (Bk. W. Pa. Jan. 17, 2023)............... 7

*Kingdomware Techs., Inc. v. United States,*
  579 U.S. 162, 169 (2016)........................................................ 8

*Security Farms v. International Broth. Of Teamsters*,
  124 F3d 999, 1008 (9th Cir. 1997)........................................... 16

*Snyder v. U Lock*, 2:21-cv-00904 (W.D.Pa. Nov. 21, 2021)........ 22, 23

*Stern v. Marshall,* 131 S.Ct. 2594, 2609, 2615 (2011).....................19

*Travelers Cas. & Sur. Co. of Am. v. PG&E,*
  549 U.S. 443, 449 (2007)....................................................... 11

*Wellness Int'l Network Ltd. v. Sharif*, 573 US 665 (2015)................... 19

## ARGUMENT

### I. MOOTNESS AND LACK OF A JUSTICIABLE CONTROVERSY REQUIRE VACATUR

Even the Trustee may only object to a claim "if a purpose would be served." 11 USC 704(a)(5). As explained, there are two reasons why Biros' objections relating to unsecured claims are moot and lack a purpose. First, because Biros unilaterally withdrew all of her unsecured claims and her administrative claim would be paid first. Second, because the estate is administratively insolvent and unsecured creditors will not be paid anything.

Biros' brief contains subtle admissions that demonstrate mootness through the withdrawal of her claims. Specifically, at page 34 of her brief, Biros notes that she "had" standing (past tense) and that "*When* Biros filed her objections in February 2023, both she and Snyder had pending claims...".

The problem is the present tense and the time when Biros withdrew her unsecured claims (shortly before the bankruptcy court made its decision). Biros no longer has standing and she no longer has any unsecured claims that enable her to bring an objection. Therefore, no legitimate interest exists in advancing the objection.

For a federal court to exercise jurisdiction, "an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)).

In August 2023 Biros knew the objections were moot, she admitted it again in January 2024. Yet she urged the bankruptcy court to make the determination simply because the matter had been briefed and argued. Specifically, Biros' counsel stated:

> I'd just like to add at that Status Conference in August [2023], when we were discussing the administrative insolvency of this Chapter 7 case, we expressed concern that the Court might find the need to moot our Objection to Shanni Snyder's Claim. **We encouraged the Court to continue to make the decision since it had been fully briefed and argued**, **and the Court indicated that it would**.

*See In re: U Lock,* 22-20823 (Bk. W.Pa.), Entry 524, page 7 (1/10/2024).

Biros persists in advancing this objection not because the unsecured claim that will never be paid somehow harms her, but so she can gain ammunition for her RICO lawsuit. *See* Case 25-1845 (3rd Cir.). This lawsuit specifically alleges that the involuntary bankruptcy

petition – even though said petition was granted – and the proof of claim itself constituted criminal bankruptcy fraud warranting civil RICO liability.

Also at page 34, Biros makes the bald argument that somehow the objection matter did not become moot because Appellant's claim "also created the potential for Snyder to complicate the administration of the U Lock estate." This assertion appears unsupported.

Contradicting Biros' own claim to the bankruptcy court that, "it is abundantly clear that there will be no distribution to general unsecured creditors," a751, and that "Inasmuch as there will be no distribution for unsecured creditors… Movant also realizes that there is no benefit to spending the money and the court's time on the trials on the Objections and claims," a755, Biros now suggests that if George Snyder prevails on his pending appeal about Biros' administrative claim, it could provide money to unsecured creditors.

However, the George Snyder appeal involves only $18,000 in administrative rents and that would only increase the percentage George Snyder receives on his administrative claim that was granted, and it would provide the trustee an opportunity to collect more of his legal fees, but it would not provide any money to unsecured creditors.

**6**

Biros points to nothing in the record showing that $18,000 would end the insolvency of the estate needed to provide money to unsecured creditors.

Moreover, after being sanctioned for grossly exaggerated claims, *see In re: U Lock*, 2023 WL 308210 (Bk. W. Pa. Jan. 17, 2023), it is unlikely that she would file them again when the bankruptcy court already informed her they lacked merit. Specifically, Biros' first unsecured claim sought prepetition rent of a property she did not own at the time and the bankruptcy court explained that granting the claim would result in a double-payment. *See* Entry 524, page 16.[1] Biros' other withdrawn claim involved environmental damage that the bankruptcy court explained there existed no evidence was the fault of U Lock[2]. *See* Entry 524, pages 16-17.

---

[1] The bankruptcy court explained, "I think there is some questions and concerns that the Court would have in terms of the entitlement there in light of the fact that this was a Constructive Trust and the property was awarded to Ms. Biros because U LOCK was unable to pay the Loan. And so, from that standpoint Ms. Biros was a Lenderand instead of getting repayment was given the Deed to the property. I'm not entirely convinced at this point that that would entitle her to pre-petition rent on top of that."

[2] The bankruptcy court advised Biros, "The question I would have at this point is, what proof is there that U LOCK caused those environmental issues or is ultimately liable for any environmental remediation that would be necessary? So, that's something else that would need to be addressed if the day and time comes that we would go into the merits of that Claim in full."

Therefore, Biros' suggestion that she *might* reinstitute her heavily contested unsecured claims *if* money could be found to pay unsecured creditors is speculative.  It consists only of "ifs" and no "whens."

Regardless, Biros' mention of remote possibilities does not suffice because "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of L.A. v. Lyons*, 461 U.S. 95, 101-02, 108-09 (1983).

 A case generally presents no live controversy after a court can no longer grant the relief the plaintiff seeks.  *Kingdomware Techs., Inc. v. United States,* 579 U.S. 162, 169 (2016).  Biros' unilateral dismissal of her unsecured claims and admission that unsecured claims will not be paid mooted the objection to Appellant's unsecured claim.  See *Gray v. Bd. of Trustees of Univ. of Tenn.*, 342 U.S. 517, 518 (1952) (*per curiam*) (action by appellees during pendency of the petition mooted appeal).  The objections to the unsecured claim "dispute is no longer embedded in any actual controversy about the plaintiff['s] particular legal rights." *Alvarez*, 558 U.S. at 93.

Under 28 USC 2106, the courts "normally do vacate the lower court judgment in a moot case because doing so 'clears the path for future relitigation of the issues between the parties,' preserving 'the

rights of all parties,' while prejudicing none 'by a decision which … was only preliminary.'" *Alvarez*, 558 U.S. at 94. "Vacatur is in order when mootness occurs through happenstance—circumstances not attributable to the parties—or, relevant here, the 'unilateral action of the party who prevailed in the lower court.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71–72 (1997).

Directing the lower court to vacate the underlying bankruptcy decision as moot will still allow Biros to try to prove before a jury that the bankruptcy case somehow harmed her.

Under the present circumstances, the claims dispute process fails to "redress an injury-in-fact" and instead is an "advisory opinion" providing only the "'emotional satisfaction' of a favorable ruling." *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977); *see also Diamond v. Charles*, 476 U.S. 54, 62 (1986) ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet [Article] III's requirements.").

Therefore, this Court should vacate the underlying decision and remand for dismissal as moot.

## II. BIROS FAILS TO SHOW WHICH SECTION OF 11 USC 502(b) SHE INVOKED TO OBJECT

In this case, the Chapter 7 Trustee remains silent as to Appellant's claim.  However, it is the Trustee that maintains an obligation to examine claims and "object to the allowance of any claim that is improper."  11 USC 704(a)(5).

While Appellant's position is that an unsecured creditor has no right to object without the trustee, Biros points only to 11 USC 502(b) to give her authority to file objections.  As explained in the opening brief, this statute provides only enumerated bases for objections and does not provide unfettered *de novo* review– especially of a judgment from an Article III court.[3]

---

[3] The specific enumerated reasons for objection include:  (1)such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured; (2)such claim is for unmatured interest; (3)if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property; (4)if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services; (5)such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title; (6)if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds— (A)the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of— (i)the date of the filing of the petition; and (ii)the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus (B)any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

Like the bankruptcy court and the reviewing district court, Biros failed to point in her brief to any specific section within 11 USC 502(b) that she bases her objection on, yet they are what limits her.

"[W]here a party in interest objects, the court 'shall allow' the claim 'except to the extent that the claim implicates any of the nine exceptions enumerated in [11 USC] § 502(b).' " *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 449 (2007).

Even though Appellant repeats the statute in her opening brief and points out that 11 USC 502(b) is limited to its subsections, Biros failed to tell us which subsection she relied upon.

Rather, Biros suggests that since *she* was not a party to a lawsuit filed by Appellant against the Debtor that resulted in a judgment after an evidentiary hearing in the district court, *she* could challenge the validity of the judgment and make Appellant prove the claim. This simply does not fall within 11 USC 502(b) and appears to be an issue reserved for the trustee's more sweeping review powers.

Unfortunately, neither the bankruptcy court nor the district court analyzed 11 USC 502(b) despite the limitation being raised. Neither court explained the statutory basis for sustaining Biros' objection.

This constitutes error and the decision sustaining Biros' objection should be reversed for a lack of a basis within 11 USC 502(b).

## III. THE TEST DOES NOT INVOLVE WHETHER BIROS WAS A PARTY TO THE U LOCK LITIGATION OR HAS DEFENSES, BUT WHETHER THE DEBTOR OWED MONEY

Biros asserts in her brief, citing common law standards relating to *res judicata*, that *she*, as a creditor, can challenge an Article III court's judgment, moreless all over again, in the Article I bankruptcy court because *she* was not a party to the litigation. In the bankruptcy court, Biros asserted affirmative defenses such as statute of limitations, provisions of the *Fair Labor Standards Act* and Department of Labor, and the credibility of the judgment holder, but does not state the judgment lacked validity. The bankruptcy court agreed Biros could relitigate the judgment *de novo* and gave the district court's findings no weight.

This precedent opens the door for creditors to be able to assert that any judgment could be disavowed simply because the creditor was not a party to the lawsuit.

However, the legal test does not involve the creditor and whether she was a party to the lawsuit, or that there might have been defenses.

On the contrary, Biros must show that the federal court judgment

"is unenforceable against the debtor and property of the debtor, under

. . . applicable law for a reason other than because such claim is

contingent or unmatured."  11 U.S.C. § 502(b)(1); *Cadle Co. v. Mangan*

*(In re Flanagan)*, 503 F.3d 171, 179 (2d Cir. 2007) (explaining that

section 502(b)(1) disallows a claim "to the extent that it is

'unenforceable against the debtor and property of the debtor, under

any agreement or applicable law for a reason other than because such

claim is contingent or unmatured.'"

In other words, the test is whether "the debtor is legally liable to

the claimant," *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir.

1992), not whether the objecting creditor was a party to the

transaction or lawsuit where it was found that the debtor was legally

liable to the claimant.  It simply has nothing to do with Biros.

Biros never demonstrated that the judgment could not be

enforced against the debtor. She never even claimed to invoke 11 USC

502(b)(1).  As explained above, she did not state which section of

502(b) she relied on.  On the contrary, she inferred she could object for

any reason and shift the burden of proof.   Neither the bankruptcy

court nor the district court found that the judgment was unenforceable

against the debtor, only that if the bankruptcy court was sitting in the

**13**

place of the district court, the different jurist would have found the claimant not credible.  This is simply not the test under 11 USC 502.

## IV.    WITHDRAWAL OF THE REFERENCE WAS MANDATORY

In footnote 7 of her brief, Biros cites various district court cases to suggest that withdrawal of the reference was not mandatory.  Biros argues that resolution of the matter "required no FLSA subject-matter expertise."

However, at pages 55 to 57, Biros spends considerable energy defending the bankruptcy courts interpretation of the *Fair Labor Standards Act*.  This demonstrates the *FLSA* was in dispute.

Indeed, the entire basis of the so-called "she lied" opinion rests on a conflict between the everyday understanding of being employed (receiving an income and paycheck) and the *FLSA's* more broad definition (performing services).  In other words, the basis of the bankruptcy court's finding that he did not believe Appellant necessarily relied on his understanding of the term "employed" – a term that has a different meaning under the *FLSA*.

Congress enacted a statute where a person not consenting to a decision by the bankruptcy court could "withdraw" the "reference." 28 USC 157(d).   In cases where the bankruptcy court needed to interpret

federal laws other than the Bankruptcy Court, the withdrawal of the reference is "mandatory" and the district court "shall" withdraw the reference. *Id.* The test is whether the decision "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

The statute is not ambiguous.

In this case, the matter involved a judgment Appellant had and continues to have against the debtor rendered by the United States District Court for the Western District of Pennsylvania after an evidentiary hearing.

If the bankruptcy court simply looked at the judgment and interpreted 11 USC 502(b), perhaps there would not have been a need to interpret federal statutes. However, the bankruptcy court disregarded the judgment and interpreted the claim *de novo* forcing Appellant to relitigate the entirety of her *FLSA* claim. This necessarily required the bankruptcy court to understand the term "employed" under the *FLSA*, not the dictionary definition.

Moreover, the bankruptcy court found various reasons why he thought the *FLSA* did not apply. The bankruptcy court not only cited the statute, but regulations, and he interpreted them.

While Appellant believes the bankruptcy court had no authority to perform a *de novo* review of a district court's judgment, in exceeding that authority he reviewed the Appellant's *FLSA* claim *de novo* which indeed usurped Appellant's rights under 28 USC 157(d) to have an Article III judge make the legal determinations and apply the facts to the *FLSA*'s definition of employment.

## V. THE DISTRICT COURT'S ORDER DISMISSING THE WITHDRAWAL OF THE REFERENCE WAS NOT INTERLOCUTORY

Contrary to Biros' position, an Order dismissing the withdrawal of the reference as moot is not interlocutory because it came along with the final judgment. If the district court denied the withdrawal of the reference and then the bankruptcy court proceeded, the denial would have been interlocutory. However, the district judge's decision came after the final judgment of the bankruptcy judge and simply incorrectly asserted mootness.

Courts have reviewed final decisions of district courts that involved withdrawing the reference where a final judgment was issued concurrently or near the time of the withdrawal of the reference motion. *See Security Farms v. International Broth. Of Teamsters*, 124 F3d 999, 1008 (9th Cir. 1997)("We have jurisdiction over [the] appeal

from the order withdrawing the reference from the bankruptcy court under 28 U.S.C. § 1291. An order to withdraw the reference is interlocutory. However, "the rule [...is] that once a final judgment is entered, an appeal from an order that would otherwise be interlocutory is then appealable"); *In re: Simmons*, 200 F.3d 738 (11th Cir. 2000)(reversing district court's withdrawal of the reference when accompanied by final order directing the bankruptcy court to dismiss bankruptcy).

Just because the decisions of this Court were not final in the past does not make the final judgment in this case interlocutory.

## VI. CONGRESS, IN ENACTING 11 USC 157(d), PROVIDED APPELLANT A STATUTORY AND CONSTITUTIONAL RIGHT TO AN ARTICLE III JUDGE; THE BANKRUPTCY COURT'S ENTRY OF FINAL JUDGMENT COUPLED WITH THE DISTRICT JUDGE'S REFUSAL TO RULE ON THE MOTION DEPRIVED APPELLANT OF HER RIGHTS

Biros misunderstands the right to an Article III judge created by 28 USC 157(d), which has nothing to do with jury trials. It was a mandatory withdrawal of the reference under the statute.

Biros implies that merely filing a bankruptcy proof of claim constitutes consent for final judgment by a bankruptcy judge because it is "core" to the bankruptcy. 28 USC 157(d), as far as the section

involving interpretation of federal laws, does not distinguish between core and non-core proceedings, jury trial or non-jury trials.

The Article I judge dug into, found no effect, and disavowed the decision of the Article III judge in a matter of federal law, the *FLSA*. He applied affirmative defenses, interpreted regulations, reviewed the credibility, and determined that Appellant was not "employed" despise the *FLSA*'s broad definition. The judge analyzed the applicability of the *FLSA*. Appellant made it clear she did not consent to an Article I judge through her motion to withdraw the reference – a motion the district court was required to grant pursuant to 28 USC 157(d)("The district court shall... so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce).

Because Congress gave Appellant the right to an Article III judge, and Appellant invoked the right, she did not knowingly and voluntarily consent to final judgment by the Article I judge. On the contrary, she specifically objected over and over again to the bankruptcy judge's jurisdiction.

Entry of final judgment is the "most prototypical exercise of

judicial power," in, in a suit "brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts."   *Stern v. Marshall,* 131 S.Ct.  2594, 2609, 2615 (2011).

"Challenges that may seem innocuous at first blush" can constitute a "threat to the separation of powers" that must be resisted. *Stern*, at 2620.

The only way to overcome Appellant's right to an Article III judge is to demonstrate that she voluntarily accepted the Article I judge's jurisdiction pursuant to *Wellness Int'l Network Ltd. v. Sharif*, 573 US 665 (2015).  *Shariff* requires the existence of "knowing and voluntary consent"  *Id* at 686.  In the present case, the objections and motion to withdraw the reference, with repeated notice to the bankruptcy court that the district court should hear the case or render a decision, not the bankruptcy court. This does not constitute consent, let alone "knowing and voluntary consent."  The mere filing of a proof of claim does not change that.

As to Bankruptcy Rule 5011, not filing for a discretionary stay does not constitute "knowing and voluntary consent" under *Shariff*. Rather, it constitutes consent to pretrial proceedings, discovery

matters, and possibly even having the trial and rendering a recommendation. However, under Bankruptcy Rule 9033(b), objections would be filed and then, under Rule 9033(c), the Article III judge would render his decision *de novo.* Rule 9033(c) even allows additional evidence to address matters like the bankruptcy judge's pondering and speculation as to questions that he felt were not answered. *Id.*

Therefore, this matter should be remanded to the district court for a *de novo* hearing with the opportunity for additional evidence under Rule 9033(c).

## VII. BIROS WAS A PARTY TO THE ADJUDICATION OF THE BANKRUPTCY PETITION, AND SHE SPECIFICALLY OPPOSED IT, SO THE ORDER FOR RELIEF IS BINDING UPON HER AND THE BANKRUPTCY COURT

Biros states that the Order for Relief cannot bind her because, "Snyder knows or should know that Biros was not in privity or a party to the Bankruptcy Court's decision to enter that order." *See* Biros' Brief at 45. However, she indeed was a party who participated in the Order for Relief proceedings. Biros specifically intervened in the bankruptcy case prior to the adjudication and filed a motion to dismiss the proceeding. a174-193. The basis of the motion to dismiss

included, *inter alia*, her dispute about the validity of the claim. *See* a180 (claiming a *bona fide* dispute exists); a181-182 (claiming Appellant was an insider and that the petition was collusive); and a182-186 (claiming bad faith).

As the Supreme Court noted in *Gratiot County State Bank v. Johnson*, 249 U.S. 246 (1919), an Order for relief is *res judicata* as to the parties and participants in the bankruptcy. *Id* at 248. The Supreme Court held that the Order for Relief did not constitute *res judicata* against the bank in state proceedings because, "The bank was not actually a party to the bankruptcy proceedings, <u>and had taken no part therein</u>." *Id* at 248 (emphasis added). The Supreme Court stated, "Unless he exercises the right to become a party, he remains a stranger to the litigation and, as such, unaffected by the decision of even essential subsidiary issues." *Id* at 249. However, Biros clearly participated as a party.

Biros' claim that she was not a party to the bankruptcy proceeding at the time of the Order for Relief is belied by the record. She objected to the bankruptcy petition, she asserted that Appellant's judgment was subject to a *bona fide* dispute, and the bankruptcy court

denied Biros' motion to dismiss – twice. Biros filed no appeal. Certainly, she could have revisited it, but she never did. This is because she wants Appellant's bankruptcy petition to remain intact, but does not want Appellant to be able to participate in it.

## VIII.   A FRAUD UPON THE COURT MUST BE SUPPORTED BY "CLEAR, UNEQUIVOCAL, AND CONVINCING EVIDENCE"

Appellant continues to suggest that something stronger than speculation is required for an Article I judge to simply disregard and invalidate an Article III court's judgment and findings.

Contrary to Biros' position in her brief, the entirety of the bankruptcy court's findings were based on speculation including the body posture of the Appellant and the other witnesses, unanswered questions that the judge did not ask, and even false narratives merely argued, without evidence, by Biros.

Nowhere, of course, did the bankruptcy court find that the judgment of the district court was not enforceable against U Lock, only that he did not believe Appellant's testimony, could disregard the judgment, and that in his opinion Appellant "lied."

An example of the misperceptions, egged on by Biros, and cited by the bankruptcy court is that Appellant never attempted to execute

on her judgment. This somehow proved Appellant's bad intentions. However, it was simply not true and an execution of the judgment exists on the public record that this Court can take judicial notice of under F.R.E. 201(d). *See* Entry 18, *Snyder v. U Lock*, 2:21-cv-00904 (W.D.Pa. Nov. 21, 2021).

Other absurdities is Biros implying that Appellant and counsel for U Lock went to the county courthouse together to file state documents because the clerk stamped the documents several minutes apart. Appellant, from North Huntingdon, Pennsylvania, lived to the east of the courthouse and counsel for U Lock, from Latrobe, Pennsylvania, was to the west of the courthouse. Nevertheless, the insinuation is they carpooled notwithstanding the uncontroverted denial of this event.

The bankruptcy judge speculated that the testimony that Appellant learned about the *FLSA* from a Department of Labor agent who visited near her property seemed incredible, yet this demonstrates the need for a district judge to interpret the *FLSA.* The bankruptcy court never asked for elaboration during the hearing and instead he just found it not credible despite it being uncontroverted.

While the bankruptcy court used strong words such as "she lied"

and "fraud upon the court," he never cited the standards for what a fraud upon the court was. A "fraud on the court" must be intentional, directed at the court, and committed by an officer of the court." *In re: Bressman*, 874 F.3d 142, 150 (3d Cir. 2017). It requires "egregious conduct" and must be supported by "clear, unequivocal, and convincing evidence." *Id.* It must "deceive the court." *Id.*

Here, the bankruptcy court's decision is based on alleged squirming by the witnesses along with a disagreement as to the definition of "employment" under the *FLSA*, which is all the more reason the failure of the district court to rule on the *withdrawal of the reference* matter caused constitutional prejudice.

## CONCLUSION

Based on the above, this Court should vacate the decisions of the district courts and remand with instructions to direct the bankruptcy court to vacate its disallowance of Appellant's proof of claim as moot. Alternatively, this Court should: (1) either reverse the judgment of the district court dismissing the motion to withdraw the reference or render a *writ of mandamus* directing the district court to grant or rule on the motion; (2) direct the district court to conduct a *de novo* review of the facts and evidence and allow additional evidence to be adduced

under Bankruptcy Rule 9033(c)(1); or (3) reverse the decision of the bankruptcy court and direct that it allow Appellant's unsecured claim based on her _still valid_ federal court judgment.

Respectfully submitted,

_/s/ Shanni Snyder_
Shanni Snyder
14390 Route 30
N Huntingdon PA  15642
(412) 758-1371
shannis@pm.me

APPELLANT

# COMBINED CERTIFICATIONS

I, Shanni Snyder, hereby certify as follows:

1. Bar Membership. I am representing myself *pro se*.

2. Word Count and Typeface. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,903 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14 point Bookman Old Style font.

3. Service. I certify that on the June 27, 2025, I filed this reply brief with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will cause service on all counsel and parties of record.

4. Identical Compliance of Brief. The text of the electronically filed brief and the text of the paper copies are identical.

5. Virus Check. A virus check has been performed on the PDF file containing the brief. The virus check was completed using McAfee Antivirus and no viruses were found.

*/s/ Shanni Snyder*
Shanni Snyder
14390 U.S. 30
Irwin PA  15642
shannis@pm.me
(412) 758-1371

APPELLANT