**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1842 & 24-3134 (consolidated)
_____

In re: U LOCK, INC.,
                        Debtor

SHANNI SNYDER,
                        Appellant

v.

CHRISTINE BIROS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civ. No. 2:23-cv-00979)
District Judge: Honorable Robert J. Colville
_____

In re: U LOCK, INC.,
                        Debtor

SHANNI SNYDER,
                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civ. No. 2:24-cv-00478)
District Judge: Honorable Nora B. Fischer
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 25, 2025

Before: BIBAS, FREEMAN, and NYGAARD, Circuit Judges

(Opinion filed September 30, 2025)

_____

OPINION[*]
_____

PER CURIAM

These consolidated appeals are two of several stemming from the bankruptcy proceedings of debtor U Lock, Inc. Of central concern today is a motion filed by pro se appellant Shanni Snyder (Snyder) that sought to have the District Court withdraw the bankruptcy reference of—and consider in the first instance—a particular dispute between Snyder and another of U Lock's creditors. See 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section[.]").

In the first appeal, Snyder challenges an order of the District Court denying as moot her motion under § 157(d) to withdraw the reference of creditor Christine Biros's objection to Snyder's proof of claim. Our precedent makes clear, however, that orders withdrawing or refusing to withdraw a bankruptcy reference under § 157(d) are interlocutory and not immediately appealable. Because we thus lack appellate jurisdiction in the first appeal, we will dismiss it.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In the second appeal, Snyder challenges an order of the District Court affirming an order of the Bankruptcy Court sustaining the aforementioned objection. That order is final and immediately appealable, and within its scope is the § 157(d) order that we lack jurisdiction to consider in the first appeal. So, Snyder does get her desired review of the District Court's mootness ruling. Discerning no error in that ruling, or in the ones supporting the District Court's order agreeing with the Bankruptcy Court that the objection to Snyder's proof of claim should be sustained, we will affirm the judgment under review in the second appeal.

I.    **The U Lock bankruptcy and the multitrack litigation that preceded it.**

A group of real estate speculators set their sights on commercial property on Route 30 in North Huntingdon, Pennsylvania (the Property). The group—including Christine Biros and Snyder's brothers, George Snyder and Kash Snyder—decided to form the U Lock entity to buy the Property.[1] Biros lent U Lock all of the funds needed to complete the purchase.

There were visions of developing the Property into a shopping center; meanwhile, U Lock purported to operate it as a storage facility, earning minimal annual revenue. U Lock operated the facility without filing tax returns, maintaining payroll records, or complying with various aspects of Pennsylvania law.

---

[1] The record suggests that Biros's father and at least one of her brothers were involved in the venture, albeit in silent capacities while a criminal investigation was pending. According to judicially noticeable court dockets, the Biros family patriarch eventually pleaded nolo contendere to running a corrupt organization and was sentenced to probation. Biros and her brothers pleaded guilty to lesser offenses and were fined $300.

U Lock also "never repaid Biros for the loan." In re U Lock Inc., C.A. No. 24-1202, 2025 WL 52848, at *1 (3d Cir. Jan. 9, 2025).[2] Because of that, Biros took U Lock to court. After a bench trial in the Court of Common Pleas for Westmoreland County, the court imposed a constructive trust on the Property and ordered that ownership be transferred to Biros. The Superior Court affirmed. See Biros v. U Lock Inc., 255 A.3d 489, 497 (Pa. Super. Ct. 2021), allocatur denied 271 A.3d 875 (table) (Pa. 2022).

While Biros's case against U Lock was winding its way through Pennsylvania's appellate courts, Snyder filed a pro se complaint under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq., in federal court, naming U Lock as the defendant. Snyder alleged that U Lock employed her to remotely monitor security camera feeds from the Property seven days a week, ten hours each day (from 5:00 p.m. to 3:00 a.m.), over the course of approximately four years (between 2016 and 2020). Snyder alleged further that she received no compensation for any of that work.

U Lock was served with process—Snyder had an acquaintance deliver the complaint and a summons to George Snyder—but did not enter an appearance and defend itself in the FLSA case. During a brief hearing, Snyder testified under oath that the allegations in her complaint were true, and that she would not be producing documentary evidence or witnesses. Snyder did not disclose to the District Court that U Lock's managing partners were her brothers, or that she had recently been granted a discharge in

---

[2] As that citation indicates, we have previously described the U Lock bankruptcy and precipitating events. See also In re U Lock, Inc., C.A. No. 24-1163, 2025 WL 303065 (3d Cir. Jan. 27, 2025) (per curiam); In re U Lock Inc., C.A. No. 23-2293, 2025 WL 80261 (3d Cir. Jan. 13, 2025).

her personal bankruptcy case (and that a portion of her FLSA claim was, as a result, part of that bankruptcy estate). The District Court entered a $263,104 default judgment in Snyder's favor, comprising $131,351 in compensatory damages as requested, an equal amount in liquidated damages (which Snyder had not requested), and $402 in costs.

With the FLSA judgment in hand, Snyder turned her attention to state court. She recorded the FLSA judgment in the Court of Common Pleas for Westmoreland County, commenced (pro se) quiet title litigation against several named defendants (e.g., U Lock, Biros, the county Recorder of Deeds, Pennsylvania's Attorney General), and had a *lis pendens* indexed against the Property.

Not two months later, Snyder forced U Lock into bankruptcy by filing pro se an involuntary Chapter 7 petition, pursuant to 11 U.S.C. § 303(b)(2).[3] When U Lock did not timely respond to the petition, the Bankruptcy Court entered an order for relief under 11 U.S.C. § 303(h). The Bankruptcy Court directed U Lock to file schedules, a mailing matrix, and other required documents; and it appointed a trustee for U Lock.[4]

---

[3] The Bankruptcy Court would later reflect that "the involuntary petition was part of a scheme to continue the litigation and recover the Property through an avoidance action." In re U Lock, Inc., 663 B.R. 30, 36 (Bankr. W.D. Pa. 2024). The avoidance action ultimately failed. See In re U Lock Inc., 2025 WL 52848, at *1.

[4] Biros appeared in the case and filed an emergency motion to dismiss the involuntary petition, which the Bankruptcy Court denied. Later, Snyder outbid Biros to "purchase[] from the U Lock estate virtually all causes of action it held as of the date of its bankruptcy." In re U Lock Inc., 2025 WL 52848, at *1.

In initial filings in the Bankruptcy Court, Snyder had listed herself as the sole creditor, based on the FLSA judgment, and valued her claim at $375,100. Snyder later filed a proof of claim for the reduced amount of $263,100.[5]

Claims against the estate "are deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Months after entry of the § 303(h) order for relief, Biros filed her objection to Snyder's proof of claim. Biros argued that Snyder obtained the FLSA judgment through fraud, as Snyder's sworn filings in prior court cases—among other evidence—contradicted her allegations about employment with U Lock.

The Bankruptcy Court conducted an evidentiary hearing on Biros's objection. Three witnesses testified: Snyder, along with U Lock's principals, George and Kash Snyder. Some of the evidence adduced at the hearing was the following:

- In 2018, during the time she claimed to have been employed by U Lock, Snyder represented in an application to proceed in forma pauperis in unrelated state court litigation that she was unemployed; she did not represent in that application that she was owed unpaid wages.
- In 2018, during the time she claimed to have been employed by U Lock, Snyder filed a voluntary petition for personal bankruptcy and associated schedules, representing that she was not employed; nowhere in those documents did Snyder represent that she was owed unpaid wages.
- Snyder testified that she never took a day off from work, for vacation or illness or otherwise, while employed by U Lock.
- Snyder testified that she was not in possession of any documents corroborating her claimed employment with U Lock.
- During the meeting of creditors for the U Lock bankruptcy, George Snyder represented in response to questions by the trustee that U Lock had no employees at the time it was forced into bankruptcy, and that anyone who had supported U Lock's operations had done so only in a limited capacity, perhaps just a few hours per year.

---

[5] For her part, Biros filed three administrative claims, which as amended she valued at around $600,000 in the aggregate. George Snyder, the IRS, and IPFS Corporation also filed claims.

- George Snyder testified further at the meeting of creditors that there was no internet service at the Property during the relevant time period, and that there was a closed-circuit security camera system that was not accessible remotely.
- Discovery responses produced by U Lock in its state court litigation with Biros represented that U Lock never had any employees, operating only through officers, volunteers, and contractors.
- Both George Snyder and Kash Snyder testified at the evidentiary hearing in the Bankruptcy Court that U Lock never had any employees.

App. 636–749.

In an opinion issued after the evidentiary hearing, the Bankruptcy Court stated that, "[i]n ten years, [it] has never held a stronger conviction that a fraud was perpetrated upon the court." App. 1. The Bankruptcy Court sustained Biros's objection, disallowed Snyder's claim, and "initiate[d] sanction proceedings against Ms. Snyder to address this profound abuse." Id. Snyder appealed the Bankruptcy Court's order through counsel.[6]

After the hearing on Biros's objection, but before entry of the Bankruptcy Court's order sustaining that objection, Snyder filed in the District Court a counseled motion under § 157(d) and Bankruptcy Rule 5011(a) to withdraw the reference of the objection. Snyder principally argued that Biros's objection constituted an improper collateral attack on the FLSA judgment. The District Court sua sponte entered a text order that rejected Snyder's § 157(d) motion as moot, in light of the Bankruptcy Court's ruling on Biros's objection. The District Court denied Snyder's subsequently filed pro se motion for reconsideration, for the reasons previously given in denying the § 157(d) motion, after observing that it was inappropriate for Snyder to file her own motion while represented

---

[6] The sanction proceedings ordered by the Bankruptcy Court were stayed pending disposition of any appellate proceedings.

7

by counsel. Snyder then filed a pro se notice of appeal, which opened the appeal docketed at C.A. No. 24-1842.

Thereafter, the District Court affirmed the order sustaining Biros's objection.[7] Snyder filed a pro se motion for reconsideration, which the District Court struck from the docket—because of impermissible hybrid representation—"and otherwise denied as wholly without merit." App. 73. Days later, the District Court entered an order permitting Snyder's counsel to withdraw representation and reaffirming that the reconsideration motion lacked merit. After entry of that order, Snyder filed a pro se appeal, which opened the appeal docketed at C.A. No. 24-3134. That appeal and the one docketed at C.A. No. 24-1842 have been consolidated for all purposes.

**II.　We have appellate jurisdiction in C.A. No. 24-3134, but not in C.A. 24-1842.**

No one questions our jurisdiction in the appeal at C.A. No. 24-3134. Regardless, "[w]e have an independent obligation to ascertain our own jurisdiction before we may reach the merits of" that appeal. In re Klaas, 858 F.3d 820, 825 (3d Cir. 2017) (internal quotation marks omitted). That ends up being a simple task here, because the underlying orders of the District Court and the Bankruptcy Court before it finally resolved at their respective levels the litigation of Biros's objection. We thus have appellate jurisdiction under 28 U.S.C. §§ 158(d) and 1291, in the appeal at C.A. No. 24-3134. See id.; see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 37 (2020) ("Orders in

---

[7] The District Court exercised appellate jurisdiction under 28 U.S.C. §§ 158(a)(1) and 1334.

bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case.").

Our jurisdiction in the appeal at C.A. No. 24-1842, on the other hand, is disputed.⁸ In her motion to dismiss that appeal and in her merits brief, Biros argues that we lack jurisdiction to review the District Court's order denying Snyder's § 157(d) motion as moot because "[i]t is well-settled that orders granting or denying motions for withdrawal of reference are not final." Br. 2 (quoting Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 920 F.2d 1127, 1131 (3d Cir. 1990)). We agree.

"[D]istrict courts have original jurisdiction over bankruptcy cases and related proceedings," and statutory authority to "refer" such matters to bankruptcy judges. Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 670 (2015); see 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."). In the United States District Court for the Western District of Pennsylvania, where this matter arises, the reference of bankruptcy cases to bankruptcy judges is effected by standing order. See Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, Standing Order (W.D. Pa. Oct. 16, 1984) (the Standing Order).⁹ The Standing Order is quite broad and excepts

---

⁸ Even though the appeals are consolidated, that we have jurisdiction in C.A. No. 24-3134, does not mean that we automatically have jurisdiction in C.A. No. 24-1842. See In re Klaas, 858 F.3d at 825.

⁹ A copy of the Standing Order appears at App. 772.

from referral only "personal injury tort and wrongful death claims arising in or related to a [bankruptcy] case." Id.

Pertinent here, a § 157(a) referral may be reversed. Wellness Int'l Network, Ltd., 575 U.S. at 670. Under § 157(d), district courts "may withdraw, in whole or in part, any case or proceeding referred under this section." See also Fed. R. Bankr. P. 5011(a).[10] The District Court effectively refused to withdraw the reference of Biros's objection on the ground that Snyder's § 157(d) motion was moot.

Our precedent makes clear that § 157(d) orders are interlocutory and not immediately appealable. In re Pasquariello, 16 F.3d 525, 528 (3d Cir. 1994); Allegheny Int'l, Inc., 920 F.2d at 1131; In re Pruitt, 910 F.2d 1160, 1166 (3d Cir. 1990). Such orders are not immediately appealable under § 158(d), "because the district court acts pursuant to its original jurisdiction when it denies a motion to withdraw the reference." In re Pasquariello, 16 F.3d at 528. And such orders are not immediately appealable under § 1291, because they are not "final," as that term is used in the statute. Id. A § 157(d) order merely decides the forum for a dispute; it does not resolve the dispute. See id. A ruling on a § 157(d) motion is thus "analogous to an order granting or refusing transfer of venue from one district court to another or an order granting or refusing referral of a matter to a magistrate." In re Lieb, 915 F.2d 180, 184 (5th Cir. 1990).

---

[10] Withdrawal can be permissive ("for cause shown"), or mandatory ("if . . . resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce"). 28 U.S.C. § 157(d).

Accordingly, we lack appellate jurisdiction in C.A. No. 24-1842, and Biros's motion to dismiss that appeal is granted.

As we previewed at the beginning of this opinion, though, our dismissal of C.A. No. 24-1842 does not mean that Snyder is unable to get review of the District Court's mootness ruling. Interlocutory orders are generally appealable after final judgment. See Palakovic v. Wetzel, 854 F.3d 209, 220 (3d Cir. 2017). And that is true with respect to previously unreviewable interlocutory § 157(d) orders, specifically. See, e.g., Reyes-Colon v. Banco Popular De Puerto Rico, 110 F.4th 54, 68 (1st Cir. 2024); Sec. Farms v. Int'l Bhd. of Teamsters, 124 F.3d 999, 1008 (9th Cir. 1997). Because, as we have already determined, a "final" order was entered in the litigation over Biros's objection to Snyder's proof of claim, we can and will proceed to review the merits of the District Court's order denying Snyder's § 157(d) motion as moot.[11]

**III.    The District Court did not err in rejecting as moot Snyder's § 157(d) motion.**

Snyder argued to the District Court that withdrawal of the reference of Biros's objection to Snyder's claim was mandatory because consideration of the objection implicated the FLSA, and the FLSA is a "law[] of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). As noted above, the District Court did not reach the issue of whether there was a basis for permissive or mandatory withdrawal of the reference. As Biros's objection had already

---

[11] For that reason, we do not consider Snyder's request to construe her notice of appeal as a petition for a writ of mandamus.

been ruled on by the Bankruptcy Court, the District Court determined only that Snyder's § 157(d) motion was moot, denied the motion on that basis, and closed the case.

The District Court did not err. The resolution of Biros's objection by the Bankruptcy Court meant the District Court was unable to grant the relief requested by Snyder in her motion to withdraw the reference of Biros's objection. Snyder's § 157(d) motion was thus moot in the ordinary constitutional sense. See Chafin v. Chafin, 568 U.S. 165, 172 (2013); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698–99 (3d Cir. 1996); cf. In re Colonial Realty Co., 980 F.2d 125, 128 & n.5 (2d Cir. 1992).[12]

Snyder resists that conclusion in part by criticizing the District Court's nearly nine months of inaction on her § 157(d) motion. That delay was not insubstantial. And it is true that the Bankruptcy Court conducted an evidentiary hearing and ruled on Biros's objection notwithstanding the pendency of Snyder's § 157(d) motion. But the Bankruptcy Court was permitted to do so, see Fed. R. Bankr. P. 5011(c) ("The filing of a motion for withdrawal of a case or proceeding . . . shall not stay the administration of the case or any proceeding therein before the bankruptcy judge[.]"), and Snyder acknowledged as much in filings with the Bankruptcy Court.

Furthermore, and as Snyder all but concedes in her opening brief, she never moved under Rule 5011(c) for a stay of the objection proceedings. We have considered Snyder's argument that filing a stay motion would have been futile, given the Bankruptcy

---

[12] There is no indication that the District Court relied on the doctrine of "equitable mootness," see In re Cont'l Airlines, 91 F.3d 553, 558–59 (3d Cir. 1996) (en banc), and we are not applying that doctrine here, cf. In re Boy Scouts of Am., 137 F.4th 126, 160 (3d Cir. 2025).

Court's comments expressing disinclination "to wait for the District Court to rule on [the § 157(d) motion]." Br. 42 (quoting App. 575). Even accepting that a stay motion had a poor chance of success, the fact remains that Snyder could have but never filed such a motion, so we have no way of knowing for sure whether a stay would have been granted. What we do know is that the Bankruptcy Court was well within its authority to rule on Biros's objection as it did. The actions of the Bankruptcy Court thus do not undermine the validity of the District Court's order denying Snyder's motion.[13]

**IV. The District Court did not err in affirming the Bankruptcy Court's ruling sustaining Biros's objection to Snyder's claim, so we will affirm the judgment underlying the appeal at C.A. No. 24-3134.**

In attacking the Bankruptcy Court's ruling on Biros's objection and the District Court's affirmance thereof, Snyder first argues that Biros did not have standing to pursue her objection—or, alternatively, that the objection was moot—because Biros withdrew her unsecured administrative claims against the U Lock estate.[14] We agree with Snyder that the District Court, in assessing Snyder's arguments, did not explicitly address Biros's withdrawal of her unsecured claims. But any oversight is of no consequence, because (1) Biros unquestionably had statutory authority and constitutional standing to prosecute her objection, see 11 U.S.C. § 502(a); In re Wilton Armetale, Inc., 968 F.3d 273, 280–81 (3d Cir. 2020); cf. Lutter v. JNESO, 86 F.4th 111, 124 (3d Cir. 2023); and (2) there was no

---

[13] Snyder's remaining arguments related to the § 157(d) order are without merit.

[14] Snyder argues further that the objection to her proof of claim could only have been litigated by the trustee. The District Court rightly rejected that argument on the ground that Snyder, Biros, and the trustee all stipulated to allowing Biros to pursue her objection.

mootness issue given, among other things, the ongoing litigation related to administrative claims, see, e.g., In re U Lock, C.A. No. 25-1177 (3d Cir.), and the fact that Biros's unsecured claims were withdrawn without prejudice to refiling if the trustee were to discover assets that could be distributed to U Lock's unsecured creditors, a contingency that is still in play in the active bankruptcy litigation, cf. Canute S.S. Co. v. Pittsburgh & W. Va. Coal Co., 263 U.S. 244, 248–49 (1923).

Snyder additionally challenges the District Court's order of affirmance as procedurally infirm, arguing that the District Court should have relabeled the Bankruptcy Court's order as proposed findings of fact and conclusions of law, and applied a de novo review standard across the board pursuant to Fed. R. Bankr. P. 9033(d).[15] Even assuming, arguendo, that Snyder is correct, she fails to identify any harm from the lack of the desired relabeling: the District Court reviewed all of the questions of law de novo; Snyder does not persuasively explain how any particular findings of fact by the Bankruptcy Court would be vulnerable if subject to de novo review instead of review for clear error; and the evidence adduced at the hearing on Biros's objection was compelling to the point that none of the Bankruptcy Court's findings of fact would falter if they were reviewed de novo. Cf. Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 39–40 (2014).[16]

---

[15] We review this and every other claim of legal error de novo. See In re Mintze, 434 F.3d 222, 227 (3d Cir. 2006).

[16] Snyder argues that, by not 'converting' to a recommendation the Bankruptcy Court's order sustaining Biros's objection, the District Court violated Snyder's constitutional and statutory right to have the objection decided by an Article III judge. We disagree. "When a district court refers a case to a bankruptcy judge, that judge's statutory authority depends on whether Congress has classified the matter as a '[c]ore proceedin[g]' or a

Snyder also argues that the Bankruptcy Court was predisposed to ruling against her and in favor of Biros, given the court's earlier references to Snyder's involuntary petition as "shenanigans" and to her proof of claim as "dubious." Br. 57–58. We take the Bankruptcy Court's point that there were reasons to be suspicious of Snyder's filings. And we are sympathetic to the Bankruptcy Court's frustration with some of the more egregious conduct by the parties, conduct which the Bankruptcy Court determined required the imposition of sanctions. See, e.g., In re U Lock, Inc., 663 B.R. 30, 54–55 (Bankr. W.D. Pa. 2024). Even if the Bankruptcy Court's word choices were somehow sharper than necessary, though, nothing about its tone would constitute reversible error. Additionally, we agree with the District Court that it is generally appropriate "to provide parties with 'a preview of what they needed to do to counteract' [ ] initial impressions, as

---

'[n]on-core proceedin[g][.]'" Wellness Int'l Network, 575 U.S. at 670. Generally speaking, an involuntary Chapter 7 proceeding like U Lock's "is a 'core' bankruptcy proceeding." Stursberg v. Morrison Sund PLLC, 112 F.4th 556, 564 (8th Cir. 2024). And an objection, like Biros's, to a competing creditor's claim is facially a "core" proceeding that bankruptcy judges have statutory jurisdiction to adjudicate under § 157(a). See 28 U.S.C. § 157(b)(2)(B). Furthermore, while Snyder appears to chide "the Western District of Pennsylvania" for not "updat[ing] its Order of Reference since October 1984," Br. 35, she does not dispute that Biros's objection fit within the wide-in-scope referral of the Standing Order. On the constitutional front, we reject Snyder's contention that Biros's objection constituted a so-called Stern claim, see generally Stern v. Marshall, 564 U.S. 462 (2011), that the Bankruptcy Court lacked jurisdiction to consider. Stern's narrow holding is not implicated here. See In re One2One Commc'ns, LLC, 805 F.3d 428, 433 (3d Cir. 2015) ("[T]he Court in Stern made clear that non-Article III bankruptcy judges do not have the constitutional authority to adjudicate a claim that is exclusively based upon a legal right grounded in state law despite appellate review of the bankruptcy judge's decision by an Article III judge. However, Stern did not consider the authority of bankruptcy judges to make final determinations regarding other kinds of claims and counterclaims brought by debtors and creditors, nor did Stern consider whether Article III requires appellate review of a bankruptcy judge's decisions by an Article III judge.").

doing so encourages 'parties to develop additional arguments' and '[m]ost counsel would prize such insights.'" App. 66 (quoting In re Philadelphia Newspapers, LLC, 690 F.3d 161, 172 (3d Cir. 2012), as corrected (Oct. 25, 2012)).

Turning to Snyder's substantive attack on the underlying order, she argues that the District Court, like the Bankruptcy Court, impermissibly questioned the validity of the FLSA judgment.[17] The District Court handled this issue as follows:

> The judgment of a federal court must be evaluated under the relevant federal common law standards of res judicata and collateral estoppel, otherwise known as claim and issue preclusion. If the judgment is not entitled to preclusive effect under these standards, then the Bankruptcy Court must follow the procedures for allowance/disallowance of claims set forth in the Bankruptcy Code.
> Upon consideration of the record in this matter, this Court believes that the Bankruptcy Court properly applied the legal standards of res judicata and collateral estoppel and correctly determined that the default judgment Ms. Snyder obtained against U Lock was not entitled to preclusive effect. Simply

---

[17] In granting motions to dismiss a civil RICO action filed by Biros against Snyder, her brothers and U Lock's counsel—a decision that is pending on appeal in this Court at Biros v. Snyder, C.A. No. 25-1845 (3d Cir.)—the same District Judge that entered the FLSA default judgment appears to have acknowledged that Snyder's FLSA claim was, at a minimum, legally defective. See Biros v. Snyder, DC Civ. No. 2:23-cv-00297, 2025 WL 964099, at *6 (W.D. Pa. Mar. 31, 2025) (agreeing with the Bankruptcy Court that Snyder "was not an employee of U Lock"); cf. Razak v. Uber Techs., Inc., 951 F.3d 137, 142 (3d Cir.), amended, 979 F.3d 192 (3d Cir. 2020) ("The minimum wage and overtime wage provisions [of the FLSA] at issue all require that Plaintiffs prove that they are 'employees.'") (citing 28 U.S.C. §§ 203, 206–07). That said, the FLSA judgment remains intact: U Lock has never moved to vacate it under Federal Rule of Civil Procedure 60(b), and the District Court has not vacated the judgment sua sponte. Compare Ocean City Costa Rica Inv. Grp., LLC v. Camaronal Dev. Grp., LLC, 571 F. App'x 122, 127 (3d Cir. 2014) (internal citations omitted) ("We have never decided the specific question of whether a court can *sua sponte* grant a party relief from a judgment under Rule 60(b), and our sister courts are split.") with Fed. R. Civ. P. 60(d)(3) (providing that Rule 60 "does not limit a court's power to set aside a judgment for fraud on the court"), and Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (explaining that "a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud").

> put, Ms. Biros was not a party to the FLSA case before Judge Colville and Ms. Snyder failed to demonstrate that Ms. Biros was in privity with U Lock such that neither doctrine applies to preclude Ms. Biros' objections. In addition, the judgment was obtained by default and a brief default hearing where only Ms. Snyder appeared is not enough to meet the requirement that the claims or issues be actually litigated before the District Court. Since Ms. Snyder did not satisfy the elements of res judicata or collateral estoppel, and the objection to the prepetition default judgment was supported with Ms. Snyder's prior inconsistent statements, the Bankruptcy Court correctly required her to establish her claim by a preponderance of the evidence and convened a hearing on the matter.

App. 63–64.

With due regard to any technical differences between res judicata and collateral estoppel, see United States v. 5 Unlabeled Boxes, 572 F.3d 169, 174 (3d Cir. 2009); cf. In re McMillan, 579 F.2d 289, 293 n.6 (3d Cir. 1978), as well as to the fact that the FLSA default judgment was not entered as a sanction for misconduct in that litigation, cf. In re Docteroff, 133 F.3d 210, 215 (3d Cir. 1997), we agree with the District Court. The FLSA default judgment did not have preclusive effect in the specific context of Biros's objection to Snyder's proof of claim, for substantially the reasons given in the District Court's memorandum opinion. While Snyder has argued that "Biros never demonstrated that the judgment could not be enforced against the debtor," Reply Br. 13, the record made at the evidentiary hearing in the Bankruptcy Court reveals otherwise.[18]

\* \* \*

For the reasons given above, we lack jurisdiction in C.A. No. 24-1842 and will dismiss that appeal, and we will affirm the judgment under review in C.A. No. 24-3134.

---

[18] Snyder's remaining arguments related to the Bankruptcy Court's ruling on Biros's objection lack merit and do not warrant further discussion.